*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0197p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

No. 06-5002

KENNETH MARTIN,

        *Defendant-Appellant.*

>

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 05-00025—David L. Bunning, District Judge.

Argued: July 23, 2007

Decided and Filed: May 23, 2008

Before: BATCHELDER and DAUGHTREY, Circuit Judges; ROSEN, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Peter B. Coughlan, Fort Thomas, Kentucky, for Appellant. Laura K. Voorhees, ASSISTANT UNITED STATES ATTORNEY, Fort Mitchell, Kentucky, for Appellee. **ON BRIEF:** Peter B. Coughlan, Fort Thomas, Kentucky, for Appellant. Laura K. Voorhees, ASSISTANT UNITED STATES ATTORNEY, Fort Mitchell, Kentucky, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

---

**OPINION**

---

ROSEN, District Judge.

## I. *INTRODUCTION*

Defendant-Appellant Kenneth Martin conditionally pled guilty in the United States District Court for the Eastern District of Kentucky to charges of being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and was sentenced with an enhancement under the Armed Career Criminal Act to a term of imprisonment of 180 months. Martin now appeals his conviction and sentence arguing that the district court erred in denying his motions to suppress evidence and to

---

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

disclose the identity of the confidential informant whose information led to the search of his residence and the ultimate discovery of the gun upon which the charges against him were predicated. Martin also argues that there is insufficient evidence to establish that the Walther .380 caliber semiautomatic pistol found by the agents during the execution of the search warrant had traveled in, or affected, interstate commerce. He further argues that his prior criminal convictions did not constitute sufficient predicate offenses for purposes of a sentencing enhancement under the Armed Career Criminal Act and that the district court's use of his prior convictions in fashioning his sentence violated the Sixth Amendment. For the reasons set forth below, we AFFIRM the district court's judgment.

## II. *FACTUAL BACKGROUND*

On January 5, 2005, Agent Nathan Honaker of the Northern Kentucky Drug Strike Task Force ("NKDSF") received information from a confidential informant ("CI") concerning illegal drug activity at Defendant Kenneth Martin's residence at 1219 Greenup Street in Covington, Kentucky. At the time, Martin's mother, Lauretta Martin, owned the Greenup Street home but did not live there; only Martin and his sister, Kim, resided in the house. The information provided by the CI, however, was rather vague -- there was no indication of a specific time or date on which the alleged drug activity occurred at the residence, nor was there any indication of the identity of the people engaged in the drug activity, or the type of drugs involved. All that Agent Honaker stated in his Affidavit in support of his search warrant application regarding the CI's tip was that he had "received information from a confidential informant that there was drug activity at 1219 Greenup Street, Covington, KY [and] the confidential informant advised that Kenneth Martin resides at th[at] residence." [2/9/05 Application and Affidavit in Support of Search Warrant.] Honaker further stated that the informant had "provided reliable information in the past on multiple occasions that ha[d] resulted in seizure of illegal controlled substances." *Id.*

After Honaker received the CI's tip, on February 8, 2005, two other NKDSF Agents, Agents Long and Hardcorn, inspected the trash that had been left on the curb in front of Martin's house and retrieved a material that subsequently field-tested positive for cocaine. The cocaine residue was found in the same garbage bag as mail with the address of 1219 Greenup Street. Honaker subsequently reviewed Martin's criminal history, which revealed that in July 1995, Martin had been convicted on four counts of trafficking in controlled substances in Kenton County, Kentucky. Martin's criminal history further revealed that he had been arrested for possession of marijuana on two earlier occasions. Honaker also verified through state records that Martin held an active Kentucky drivers' license with the address of 1219 Greenup Street, Covington, Kentucky.

Based upon the foregoing, the following day, February 9, 2005, Honaker applied for, and obtained from Judge Ann Ruttle of the Kenton County District Court, a search warrant for the 1219 Greenup Street residence.

On February 10, 2005, the NKDSF, aided by Covington and Kenton County Police Officers, executed the search warrant. During the search, agents discovered a Walther .380 caliber semiautomatic pistol, a magazine loaded with seven rounds, along with loose ammunition, a gun cleaning kit, a plastic bag containing marijuana, a tin with burnt material, assorted phone bills, a rolling machine, a hemostat with a burnt tip, foil-wrapped white tablets, assorted documents, a Motorola cell phone and two computer disks. However, no cocaine was found in the house. Honaker subsequently turned this case over to the Bureau of Alcohol, Tobacco and Firearms (the "ATF"), which determined that the firearm had been shipped or transported in interstate commerce.

On March 9, 2005, Martin was indicted for being a felon-in-possession of a firearm, in violation of 18.U.S.C. § 922(g)(1). Martin thereafter filed pretrial motions (1) to disclose the identity of the confidential informant and (2) to suppress the evidence seized during the execution

of a search warrant. In support of his motion to disclose the identity of the confidential informant, Martin challenged the existence and reliability of the confidential informant. In support of his motion to suppress evidence, Martin argued that the warrant affiant, NKDSF Agent Honaker, knowingly or intentionally failed to disclose that the NKDSF director, Jim Liles, previously had had a romantic relationship with Martin's former girlfriend, Valerie Slaughter.

The district court denied both motions, finding that Martin was not entitled to a *Franks* evidentiary hearing[1] and that, notwithstanding the paucity of Honaker's averments about the confidential informant, the CI's information and the cocaine residue found during the independent police investigation established sufficient probable cause to issue a search warrant. The district court also held that the search warrant affidavit was not deficient due to the lack of information concerning the NKDSF director and Martin's ex-girlfriend: "The fact that NKDSF Director Jim Liles may have had a romantic relationship twelve years earlier with someone who also had a relationship with Defendant has absolutely no bearing on probable cause in this case." [7/19/05 Sealed Memorandum Opinion and Order, pp. 8-9.]

Subsequently, Martin entered a conditional plea to being a felon-in-possession of a firearm; there was no written plea agreement. Martin did, however, specifically reserve in writing the right to appeal "the Adverse Determination and Decision relative to the Motion to Suppress Evidence seized during the search of the residence at 1219 Greenup Street, Covington, Kentucky, filed May 3, 2005." [9/16/05 Notice.]

During the plea hearing, Martin admitted to being a convicted felon who knowingly and unlawfully possessed a firearm. Also, Martin admitted, without objection, to understanding the third element of § 922(g)(1), requiring the firearm to have been in, or have affected, interstate commerce. The Government submitted that the firearm was manufactured in Alabama and had traveled in interstate commerce to Kentucky.

The district court accepted Martin's plea and, on December 21, 2005, sentenced Martin to 180 months imprisonment. During the sentencing hearing, Martin orally objected to his classification as an Armed Career Criminal. Martin argued that because his three previous cocaine trafficking offenses were consolidated into one indictment they did not satisfy 18 U.S.C § 924(e). The district court overruled Martin's objection, finding that his prior offenses were committed on different occasions, despite having been consolidated for trial.

Martin now appeals his conviction and sentence.

## III. *DISCUSSION*

A.    *MARTIN WAIVED HIS RIGHT TO APPEAL THE SUFFICIENCY OF THE GOVERNMENT'S EVIDENCE*

Martin first challenges the sufficiency of the evidence that supports his conviction. Specifically, he contends that there was no evidence that the firearm he is charged with possessing traveled in, or affected, interstate commerce. The Government contends that Martin waived his right to appeal the interstate commerce nexus by entering a guilty plea to the charge without reserving the right to appeal the issue. Martin counters that because his argument is a jurisdictional one, it is not waived.

Whether a defendant has waived his right to appeal is a legal question that an appellate court reviews *de novo*. *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005).

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

Generally, a voluntary and unconditional guilty plea "bars any subsequent non-jurisdictional attack on the conviction." *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991). However, under Fed. R. Crim. P. 11(a)(2), a defendant may, with the approval of the court and consent from the government, enter a conditional guilty plea "reserving in writing the right to have an appellate court review an adverse determination of a specified pre-trial motion." Fed. R. Crim. P. 11(a)(2).[2] The provision places an "affirmative duty on the defendant to preserve all potential collateral challenges through the preservation mechanism of Rule 11(a)(2)." *Pickett, supra*, 941 F.2d at 416. "[I]n the absence of a court-approved reservation of issues for appeal, [a defendant pleading guilty] waives all challenges to the prosecution except those going to the court's jurisdiction." *Id.* (citing *Hayle v. United States*, 815 F.2d 879, 881 (2nd Cir. 1987)).

Where a defendant does not specify an issue for preservation on appeal, federal courts have normally held that Rule 11(a)(2) bars its presentation on appeal. In *Pickett*, the defendant pled guilty to trafficking in controlled substances. He subsequently appealed his conviction, arguing that his prosecution in federal court commenced in violation of the Speedy Trial Act and that his indictment for violation of federal drug laws subsequent to his state indictment for trafficking in drugs violated the Fourteenth Amendment's due process clause. *Pickett*, 941 F.2d at 416. Because the defendant did not enter a conditional plea that specified these issues for preservation on appeal, the *Pickett* court determined that operation of Rule 11(a)(2) barred the presentation of both of these arguments against his conviction upon appeal. *Id.*

Similarly, in *United States v. Napier*, 233 F.3d 394, 399 (6th Cir. 2000), we determined that the defendant's challenge of the district court's pretrial evidentiary rulings had not been preserved for appeal where the defendant's plea agreement only reserved the right to appeal the district court's order denying his motions to dismiss the indictment.

This Circuit has specifically interpreted Rule 11(a)(2) to bar a defendant's challenge that evidence was insufficient to support a conviction, absent a conditional plea that specified the issue for preservation on appeal. For example, in *United States v. Bahhur*, 200 F.3d 917 (6th Cir. 2000), the defendant argued that the statutory prerequisites necessary to sustain his conviction for a prohibited monetary transaction in violation of 18 U.S.C. § 1957 were not met because he never engaged in "a transaction involving a quantity of food stamp coupons in excess of $5,000."[3] *Id.* at 922. Although the defendant characterized his objection as a jurisdictional one, the court held that, in fact, it was a non-jurisdictional argument against the sufficiency of the government's evidence and was waived when the defendant failed to enter into a conditional plea reserving this issue for appeal under Rule 11(a)(2). *Id.* at 923.

Similarly, in *United States v. Turner*, 272 F.3d 380 (6th Cir. 2001), the court found that a defendant who was charged with violation of the Hobbs Act, through his guilty plea, waived his right to argue that the government failed to produce an adequate basis upon which the court could conclude the conspiracy to commit robbery affected interstate commerce. *Id.* at 383. Specifically, the court noted that "[a]lthough the Hobbs Act's interstate commerce element is commonly referred to as a 'jurisdiction element,' the failure of the government to prove a nexus between the crime and

---

[2] Although Rule 11 requires that a conditional plea reserve the right to appeal in writing, the failure to do so may be excused when it is harmless. *See* Fed. R. Crim. P 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."); *see also United States v. Ormsby*, 252 F.3d 844, 848 n.3 (6th Cir. 2001) (requirement that reservation of rights be in writing excused where transcript of the plea hearing made clear that defendant's plea was conditional, the government consented to the conditional plea, and the conditional plea was approved by the court.)

[3] 18 U.S.C. § 1956 defines "specified unlawful activity" for purposes of 18 U.S.C. § 1957 as a felony food stamp transaction that involves a quantity of coupons having a value of not less than $5,000.

interstate commerce is not jurisdictional in a sense that it deprives the district court of subject matter jurisdiction." *Id*. at 390.

In the present case, Martin waived his right to appeal the sufficiency of the evidence supporting his conviction by entering a guilty plea that did not reserve the issue for appeal. His written Notice of reservation of right to appeal did not reserve this issue for appellate review; it only reserved the right "to have an Appellate Court review the Adverse Determination and Decision relative to the Motion to Suppress Evidence seized during the search of the residence at 1219 Greenup Street, Covington, Kentucky, filed [on] May 3, 2005." As in *Napier*, Martin may have reserved the right to appeal other issues, but he did not reserve the right to appeal the sufficiency of the government's evidence. *See Napier*, 233 F.3d at 399.

### *The Interstate Commerce Nexus Is Not a Jurisdictional Issue*

Martin argues, however, that his conditional guilty plea did not waive his right to challenge on appeal the insufficiency of evidence establishing that the gun upon which his felon-in-possession charge was predicated traveled in, or affected, interstate commerce because this issue is a jurisdictional one. However, case law does not support Martin's position. Although Martin is correct that his guilty plea did not waive jurisdictional defenses, his characterization of his challenge in this case as "jurisdictional" is wrong.

Like the defendant in *Bahhur, supra*, Martin is actually attacking the sufficiency of the government's evidence, not the district court's authority to have decided the case. *See Bahhur*, 200 F.3d at 922. Specifically, Martin is challenging the firearm's nexus with interstate commerce. However, as the *Turner* court noted, while courts frequently call the interstate commerce nexus requirement a "jurisdictional element," it is jurisdictional only in the sense that without that nexus there can be no federal crime; it does not affect a court's power to adjudicate a case. *See Turner*, 272 F.3d at 390.

The Seventh Circuit considered this issue, albeit in the context of a different statute, and gave this explanation:

> [Defendant's] argument rests on the concept that a guilty plea does not waive jurisdictional defenses to the crime at issue. But the nexus with interstate commerce, which courts frequently call the "jurisdictional element," is simply one of the essential elements of § 844(i). Although courts frequently call it the "jurisdictional element" of the statute, it is "jurisdictional" only in the shorthand sense that without that nexus, there can be no federal crime under the bombing statute. It is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, i.e., a court's constitutional or statutory power to adjudicate a case, here authorized by 18 U.S.C. § 3231. This court has recognized for decades that, despite defendants' tendency to confuse facts essential to be alleged as elements of the crime with jurisdictional requirements arising as a matter of law, once a defendant pleads guilty in a court which has jurisdiction of the subject matter and of the defendant, as did the court in the instant case, the court's judgment cannot be assailed on grounds that the government has not met its burden of proving so-called jurisdictional facts. Even if the government fails to establish the connection to interstate commerce, the district court is not deprived of jurisdiction to hear the case.

*United States v. Martin*, 147 F.3d 529, 531-32 (7th Cir.1998) (citations and some internal punctuation omitted); *see also United States v. Robinson*, 119 F.3d 1205, 1212 n.4 (5th Cir. 1997), *cert. denied*, 522 U.S. 1139 (1998) ("[T]he commercial nexus element in the Hobbs Act is not 'jurisdictional' in the sense that a failure of proof would divest the federal courts of adjudicatory power over the case. The commercial nexus requirement is in fact a substantive element of the

crime."); *United States v. Hassan*, 230 F.3d 1360, 2000 WL 1477967, *2 (6th Cir. 2000) (unpublished) (interstate commerce element in statute prohibiting the use or trafficking in counterfeit access devices, 18 U.S.C. § 1029, is "not jurisdictional in a sense that it affects a court's subject matter jurisdiction, i.e., a court's constitutional or statutory power to adjudicate a case").

To successfully challenge the district court's jurisdiction, a defendant who enters a guilty plea must establish that the face of the indictment failed to charge the elements of a federal offense. *Turner, supra*, 272 F.3d at 389-90; *Mack v. United States*, 853 F.2d 585, 586 (8th Cir.1988). Martin makes no argument that the face of the indictment failed to charge the elements of a federal offense. This is not surprising as the indictment in the present case clearly included all of the requisite elements of 18 U.S.C. § 922(g)(1).[4] Indeed, through his guilty plea, Martin admitted to the propriety of the court's jurisdiction. *See Turner*, at 390; *United States v. Mathews*, 833 F.2d 161, 164 (9th Cir.1987) (a guilty plea admits factual allegations in the indictment that form the basis for federal jurisdiction).

Based upon the foregoing discussion, we conclude that Defendant has waived his right to challenge in this appeal the interstate commerce nexus or any other aspect of the sufficiency of the evidence supporting his conviction.

B.      *MARTIN LIKEWISE WAIVED THE RIGHT TO APPEAL THE DISTRICT COURT'S DENIAL OF HIS MOTION TO DISCLOSE THE CONFIDENTIAL INFORMANT'S IDENTITY.*

This analysis of waiver applies with equal force to Martin's challenge of the district court's denial of his motion to disclose the identity of the confidential informant. Martin, however, argues that he has not waived his right to obtain review of this issue on appeal because he reserved in writing for appeal the issue of his motion to suppress "within days" of filing the motion to disclose the identity of CI, and the court's sealed Memorandum Opinion and Order addressed both motions.[5] However, as indicated above, the procedural rule permitting the defendant to enter a conditional plea of guilty while reserving the right, on appeal, to review an adverse determination of any specified pretrial motions imposes "an affirmative duty on the defendant to preserve *all* potential collateral challenges through the preservation mechanism of Rule 11(a)(2)." *Pickett*, 941 F.2d at 416 (emphasis in original). Furthermore, Rule 11(a)(2) explicitly requires that, when entering a conditional plea, the reservation of a right to appeal a specified motion be in writing. Fed. R. Crim.

---

[4] 18 U.S.C. § 922(g) provides, in pertinent part:

It shall be unlawful for any person--

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year * * * to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

The indictment here charges,

On or about February 10, 2005, in Kenton County, in the Eastern District of Kentucky, Kenneth Martin, having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce a firearm, that is an Interarms, Walther PPK, .380 caliber, semiautomatic pistol, all in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1).

[5] In fact, two other motions -- a motion for disclosure of audio and video tapes and a motion to preserve evidence -- were also addressed in the district court's same sealed order. See 7/19/05 Sealed Memorandum Opinion and Order, pp. 1-2; 6.

P. 11(a)(2). Despite this affirmative duty, Martin did not provide a written reservation of the issue of the CI's identity for appeal.

Nor does the transcript of Martin's plea hearing give any indication that he specifically reserved this issue for appeal. *See Ormsby*, 252 F.3d at 948 n.3; *United States v. Yasak*, 884 F.2d 996, 1000 (7th Cir. 1989) (finding that a defendant did not waive his right to appeal the district court's denial of his motion to dismiss despite the lack of a writing reserving his right to appeal the issue where the plea hearing transcript plainly shows that both parties agreed to the conditional plea, that the district court accepted the plea, and that the court understood its ruling on Yasak's motion to dismiss was the specific (and dispositive) issue for appeal). The transcript of Martin's plea hearing in this case, however, makes clear that the only issue preserved for appeal was the denial of Martin's Motion to Suppress.[6]

For the foregoing reasons, we find that Martin has failed to reserve the right to appeal the denial of his motion to disclose the identity of the confidential informant.

---

[6] The relevant portion of the plea hearing transcript is as follows:

THE COURT:    Mr. Martin, your attorney has notified the Court that it's your intention to enter a conditional plea of guilty to the charge in the Indictment, is that correct?

THE DEFENDANT:    Yes, sir.

THE COURT:    So in your notice, Mr. Cox, you are preserving your right to appeal the Court's adverse decision on your motion to suppress evidence, is that correct?

MR. COX [Defendant's counsel]:    Yes, sir. That's correct, Your Honor.

* **

THE COURT:    Now, the conditional nature of the plea is that, I take it, Mrs. Voorhees, that the firearm which is alleged in the indictment was found during the execution of the search warrant, is that right?

MS. VOORHEES [AUSA]:    That's correct, Your Honor.

THE COURT:    In fact, if the Sixth Circuit, which is the Appellate Court over in Cincinnati, Mr. Martin, determines that I incorrectly denied your motion to suppress, in that event, you would be able to -- the case would be remanded to me and you would be permitted to withdraw your guilty plea. That's what a conditional plea is. You understand that?

THE DEFENDANT:    Yes.

[9/22/05 Plea Hearing Tr. pp. 2, 8].

C.   *THE TRIAL COURT DID NOT ERR IN DENYING MARTIN'S MOTION TO SUPPRESS EVIDENCE.*

As indicated, the one issue specifically preserved for appeal by Martin was the district court's denial of his motion to suppress evidence seized during the search of his residence. The search was conducted pursuant to a search warrant issued by a Kentucky state court judge.

In denying Defendant's Motion to Suppress, the district court determined that there had been sufficient probable cause for the issuance of the warrant notwithstanding Martin's complained of paucity of detail in the warrant affidavit regarding the information provided by the confidential informant and the lack of any information in the affidavit regarding Defendant's previous girlfriend's romantic relationship ten years earlier with Jim Liles, the Director of the NKDSF.

The district court's factual findings on a motion to suppress are reviewed for clear error and its legal determinations are reviewed *de novo*. *United States v. Frazier*, 423 F.2d 526, 531 (6th Cir. 2005). A finding of probable cause is a legal conclusion that we also review *de novo*. *United States v. Padro*, 52 F.3d 120, 122 (6th Cir. 1995). However, the evidence must be viewed in a light most likely to support the decision of the district court. *Frazier, supra*; *United States v. Heath*, 259 F.3d 522, 528 (6th Cir. 2001).

The Fourth Amendment provides, in pertinent part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation. . . ." U.S. Const. amend. IV. Probable cause is described as a fair probability -- not an absolute certainty -- that evidence of the crime will be found at the location. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This court reviews the determination of probable cause made by the judge issuing the warrant with "great deference" and will reverse the decision only if it is arbitrarily made. *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003). Our inquiry requires the review of the totality of the circumstances "to make a practical, common-sense," not hyper-technical, determination of whether probable cause is present. *Gates* at 238. Under the totality of the circumstances approach, our task is to assess the adequacy of all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of a confidential informant, *id*. at 230, as well as law enforcement's corroboration of the informant's tip. *United States v. Smith*, 182 F.3d 473, 478 (6th Cir. 1999); *McCray v. Illinois*, 386 U.S. 300, 304 (1967) (stating that information provided by a proven and reliable informant, along with police corroboration of the tip, is sufficient to establish the necessary probable cause).

In *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996), we recognized that two factors that are critical in determining whether an affidavit based on a confidential informant's tip provides a substantial basis for finding probable cause: (1) an explicit and detailed description of alleged wrongdoing; and (2) corroboration of the tip through the officer's independent investigative work. *Id*. at 1377. However, an affidavit is not insufficient merely because it lacks explicitness of detail and every statement is not corroborated. "The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir.), *cert. denied*, 531 U.S. 907 (2000).

Applying the foregoing authorities in the present case, it is clear that the district court did not err in denying Martin's motion to suppress evidence. Martin argues the affidavit information did not supply probable cause because it lacked explicit detail of the informant's basis of knowledge. In doing so, Martin relies heavily on *Weaver, supra*, 99 F.3d 1372. However, Martin's reliance on *Weaver* is misplaced. Although *Weaver* certainly leaves little room for an issuing judge to rely on a generous interpretation of facts recited in a preprinted form containing boilerplate language, it was never intended to set a stricter standard than that established in *Gates*. *See Smith*, 182 F.3d at 484. It is the totality of the circumstances that determines whether the instant affidavit was in fact "bare bones" or sufficient to establish probable cause. *See Allen*, 211 F. 3d at 975.

Assessing the contents of the instant affidavit under the totality of the circumstances shows that information contained therein provided a substantial basis from which the judge could conclude that probable cause existed. With respect to veracity, Agent Honaker's affidavit states that the confidential informant in the present case is a known person who, unlike in *Weaver*, previously provided information that resulted in seizure of illegal controlled substances. *See Weaver*, 99 F.3d at 1379. This assertion is sufficient to establish the informant's reliability. *See United States v. Greene*, 250 F.3d 471, 480 (6th Cir.2001) (holding that "the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable"); *United States v. Smith*, 182 F.3d 473, 483 (6th Cir.1999) ("[I]f the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required."). As we held in *United States v. May*, 399 F.3d 817 (6th Cir. 2005), it is sufficient if the agent's affidavit states only that the "'cooperating source has provided assistance in unrelated drug investigation cases.' The affidavit need not include a detailed factual basis for [the affiant's] statement in order to support the judge's finding of probable cause." *Id.* at 826.

Moreover, an independent police investigation corroborated the reliability of the confidential informant's information. *See Gates, supra*, 462 U.S. at 242 (weak factual information may be bolstered if the authorities undertook probative efforts to corroborate an informant's claims through independent investigation). The confidential informant's minimal facts here were bolstered when the trash pull yielded cocaine residue. Also, Martin's criminal history revealed that he had been convicted of four counts of trafficking cocaine and possession of marijuana on two occasions. The independent corroboration conducted by the police, therefore, provided other indicia of reliability such that the absence of an "explicit and detailed statement of alleged wrongdoing" is not critical and, under the totality of the circumstances, provides sufficient basis for establishing probable cause. *See id.* at 237-38, 243-44.

Martin also argues that Agent Honaker's affidavit is deficient because it did not contain certain facts that, in Martin's view, might have dispelled probable cause and should have warranted a *Franks* hearing. However, Martin has failed to offer any evidence showing that the omissions were made intentionally or with reckless disregard for the truth. He merely asserts that the affidavit omitted information about NKDSF Director Liles and Martin's ex-girlfriend and posits that if included, that information could have dispelled probable cause. Such a bare assertion of possibilities, however, is not enough to warrant a *Franks* hearing. *See Franks*, 438 U.S. at 171 (holding that "[t]o mandate an evidentiary hearing. . . there must be allegations of deliberate falsehood or of reckless disregard for the truth. . . accompanied by an offer of proof").

For all of the foregoing reasons, we find that the district court properly denied Martin's motion to suppress the evidence seized during the execution of the search warrant.

D.      *THE DISTRICT COURT DID NOT ERR IN DETERMINING THAT MARTIN'S PRIOR CONVICTIONS SUBJECTED HIM TO SENTENCING AS AN ARMED CAREER CRIMINAL.*

The standard of review of the district court's legal sentencing decisions is *de novo*. *United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005). However, where the inquiry turns upon the determination whether the defendant's prior convictions are distinct criminal episodes that should be counted separately under statutory provisions, the standard of review is clear error. *United States v. Powell*, 404 F.3d 678, 682 (2nd Cir. 2005); *United States v. Rice*, 43 F.3d 601, 606 (11th Cir. 1995).

Generally, a defendant convicted of being a felon-in-possession of a firearm pursuant to 18 U.S.C. § 922(g) is sentenced to between zero and ten years in prison. 18 U.S.C. § 922(g). However, a defendant convicted under § 922(g) can receive an enhanced sentence under the Armed Career

Criminal Act (the "ACCA"). The ACCA provides, in pertinent part, that a person who is a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g) and who has "three previous convictions. . . for a violent felony or a serious drug offense. . . committed on occasions different from one another. . . shall be. . . imprisoned for not less than fifteen years." 18 U.S.C. § 924(e)(1). For purposes of designating an Armed Career Criminal, a "violent felony" is "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another," or "is burglary. . . or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). A "serious drug offense" is defined to include "an offense under State law, involving manufacturing, distributing, or possessing with intent to distribute, a controlled substance for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

Under this statute, the sentencing court is required to look to current state law, not the state law at the time of the previous conviction, to determine whether the defendant could have been sentenced to ten years' imprisonment. *See United States v. Morton*, 17 F.3d 911, 915 (6th Cir. 1994). In *Morton*, for example, the defendant appealed his sentence enhancement under the ACCA for having three prior serious drug offense convictions. *Id.* The court found that "[a]t the time defendant was being sentenced. . . the State of Tennessee did not consider less than .5 grams, when the defendant has no more than one prior felony conviction, serious enough to impose a ten-year sentence." *Id.* Therefore, the *Morton* court held that the defendant's Range I convictions for selling less .5 grams did not constitute serious drug offenses as defined by the ACCA. *Id.*

In this case, Martin argues that his ACCA sentence enhancement was improper because his prior four state felony drug offenses for trafficking in controlled substances on March 1, 1994, March 8, 1994, March 23, 1994, and May 12, 1994, all occurred in Kenton County, Kentucky, and were "related" offenses because they were contained in a single indictment, consolidated in his plea agreement, and resulted in concurrent sentences.

To be sure, to trigger a sentence enhancement under the ACCA, a defendant's prior felony convictions must involve separate criminal episodes. *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir. 1991). However, offenses are considered distinct criminal episodes if they "occurred on occasions different from one another." *United States v. Roach*, 958 F.2d 679, 684 (6th Cir.), *cert. denied*, 506 U.S. 845 (1992). Two offenses are committed on "occasions different from one another" if it is possible to discern the point at which the first offense is completed and the second offense begins. *United States v. Hill*, 440 F.3d 292, 297 (6th Cir. 2006).

For example, in *United States v. Brady*, 988 F.2d 664 (6th Cir. 1993), notwithstanding that two armed robberies were committed on the same day, we found them to be separate offenses under the ACCA where the initial robbery at the beauty shop had concluded, and the defendant had left the establishment before he entered the bar to commit the second robbery. *Id.* at 669. Similarly, in *United States v. Carnes*, 309 F.3d 950 (6th Cir. 2002), *cert. denied* 537 U.S. 1240 (2003), we held that the defendant's two previous convictions for burglary were not a single criminal episode because he had completed the burglary of the first residence before he entered the second residence to burglarize it such that it was "possible to identify an endpoint between the two offenses." *Id.* at 956.[7]

_____

[7] *Cf., United States v. Murphy*,107 F.3d 1199, 1210 (6th Cir. 1997) (holding that robberies of two residences in the same duplex did not constitute separate offenses because the defendant "never left his original location, he never ceased his original conduct and he never successfully escaped the site of the first crime until the second was complete"); *United States v. Graves*, 60 F.3d 1183, 1187 (6th Cir. 1995) (holding that because the defendant had not yet left the location of the burglary when he committed the assault within minutes of the burglary, those two offenses were part of the same criminal episode).

Furthermore, "[t]he relevant factor for determining the number of predicate offenses under the ACCA is not the date of conviction for those predicate offenses, but the date that the defendant committed the offense for which he is subsequently convicted." *Roach*, 958 F.2d at 683. Thus, in *Roach*, for purposes of determining whether the defendant committed the requisite number of prior offenses for sentence enhancement under the ACCA, we found immaterial the fact that two or more of the defendant's convictions stemmed from the same indictment. *Id.* Consequently, we held that three convictions on the same date did not constitute a single criminal episode even where the three drug-trafficking sales giving rise to the convictions were not separated by any other intervening convictions and occurred within only a matter of days. *Id.* Likewise, in *United States v. Warren*, 973 F.2d 1304 (6th Cir. 1992), this Court held immaterial for ACCA enhancement purposes the fact that offenses were consolidated for sentencing or for concurrent sentences, even though such consolidation could be relevant under the otherwise applicable Sentencing Guidelines, so long as the separate offenses for which the defendant was convicted occurred at different times and/or places. *Id.* at 1310.

In addition, prior crimes are predicate offenses under the ACCA if, notwithstanding the number of victims, it would have been possible to cease the criminal conduct after the first offense without committing the second offense. In *Brady*, for example, we held "offenses committed by a defendant at different times and places and against different victims, although committed within less than an hour of each other," should be separate predicate convictions under the ACCA, because the defendant could have decided one robbery "was enough for the evening" and left without committing the second robbery. *Brady*, 988 F.2d at 669. Similarly, in *United States v. Wilson*, 27 F.3d 1126 (6th Cir.), *cert. denied*, 513 U.S. 976 (1994), we held that two criminal sexual conduct offenses on the same date in the same house but against separate victims on different floors and locations within the house constituted separate offenses for ACCA purposes. *Id.* at 1131. We specifically noted in *Wilson* that the defendant could have stopped his criminal rampage, but instead chose to continue it, selecting different victims in different, separate places. *Id. See also Hill*, 440 F.3d 298 (holding that two robberies on the same day were separate predicate offenses under the ACCA where the defendant, after completing the first burglary, "could have ceased his criminal activity at that point" before he crossed the street to commit a second robbery).

Applying the foregoing authorities in this case, it is clear that Martin's four prior state felony drug convictions arose from separate criminal episodes. The underlying offenses occurred several days apart. That the offenses were ultimately charged in one indictment and consolidated for plea purposes is irrelevant. Similarly irrelevant is the fact that Martin's sentences on these convictions ran concurrently.

Martin also argues that the district court erred in finding that his predicate offenses qualify as serious drug offenses sufficient to satisfy the ACCA. Martin contends that his prior convictions do not qualify as serious drug offenses because the maximum prison term under Kentucky state law for Class C felonies is not "ten years or more" as required by the ACCA, but rather is "not less than five(5) years nor more than ten (10) years. Ky. Rev. Stat. Ann. § 532.060. Specifically, Martin submits that the Class C felony statutory term of imprisonment of "not less than five (5) years nor more than ten (10) years" is *exclusive* of ten years. Thus, he claims he should not have been subject to the ACCA enhancement.

Case law and logic do not support Martin's argument. Martin admits that he has four Kentucky state convictions of Class C felonies for trafficking drugs. As indicated, under current

Kentucky law, Class C felonies carry a maximum sentence of "not less than five (5) years nor more than ten (10) years." Ky. Rev. Stat. Ann. § 532.060.[8]

Notwithstanding Defendant's protestations, Kentucky courts consider a Class C felony serious enough to impose sentences of ten years and have consistently done so. *See Johnson v. Commonwealth*, 105 S.W.3d 430 (Ky. 2003) (defendant convicted of class C felony and sentenced to "the maximum of ten years imprisonment.").[9] Moreover, albeit in an unpublished opinion, this Court has already found that, under Kentucky law, "[a] Class C felony is punishable by five to ten years' imprisonment" and qualifies as a "serious drug offense" under the ACCA. *United States v. Tolley*, 173 F.3d 431, 1999 WL 137620 at * 10 (6th Cir.) (unpublished), *cert. denied*, 528 U.S. 898 (1999).

The foregoing makes clear, therefore, that Martin's Class C felonies were separate and distinct "offense[s] under state law, involving . . distributing. . . a controlled substance for which the maximum term of imprisonment of ten years or more is prescribed by law" that supported his qualification for sentencing as an armed career criminal. *See* 18 U.S.C. § 924(e)(2)(A)(ii).[10]

E.     *THE DISTRICT COURT DID NOT VIOLATE THE CONSTITUTION BY FINDING MARTIN'S PRIOR CONVICTIONS QUALIFIED AS SERIOUS DRUG OFFENSES TO ENHANCE HIS SENTENCE AS A CAREER CRIMINAL.*

The standard of review is *de novo* for a constitutional challenge to a sentence. *Hill*, 440 F.3d at 298.

Generally, the district court exercises discretion in sentencing a defendant. *United States v. Booker*, 543 U.S. 230, 233 (2005). The Constitution imposes limits, however, on the factors a judge may consider, *Blakely v. Washington*, 542 U.S. 296, 308 (2004), and mandates that decisions to increase the statutory maximum penalty be based solely on facts admitted by the defendant or proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). However,

---

[8] In Kentucky, felonies are classified for purposes of sentencing into five categories: Class D, Class C, Class B, Class A. Ky. Rev. Stat. Ann. § 532.010. The authorized terms of imprisonment are as follows: Class D, not less than one year nor more than five years; Class C, not less than five years nor more than ten years; Class B, not less than ten years nor more than twenty years; Class A, not less than twenty years nor more than fifty years. Ky. Rev. Stat. Ann. § 532.060.

[9] *See also, Smith v. Commonwealth*, 2006 WL 73728 at * 1 (Ky. App. 2006) (affirming jury conviction of defendant for Class C felony of trafficking in a controlled substance and sentence of ten years' imprisonment); *Sparks v. Commonwealth*, 2006 WL 2451732 at * 1-2 (Ky. 2006) (affirming defendant's ten year prison sentence for Class C felony of trafficking in a controlled substance); *Carpenter v. Commonwealth*, 2003 WL 21949109 at * 1 (Ky. App. 2003) (affirming defendant's sentence enhancement for being a persistent felony offender, which elevated the sentence from a Class C felony with a maximum sentence of ten years to a Class B felony, subjecting him to twenty years in prison); Ky. Prac. Substantive Crim. L. § 1:7 (2007) (stating that "[t]he authorized maximum term of imprisonment for felonies is … 5 to 10 years for Class C felonies").

[10] Additionally, Martin's argument fails the common sense test. Martin submits that, because under Kentucky law a Class C felony is considered less serious than a Class B felony, a Class C sentence of "not more than ten years" does not encompass the same ten year sentence of a Class B sentence of "not less than ten." Despite Martin's argument, he provides no authority to support this position. Instead, Martin relies on "common sense" to tell him that "nor more than ten years" does not include ten years. However, ten years is by definition both "not more than ten years" and "not less than ten years." The adjective phrase "more than" "serves as a quantifier meaning greater in size or amount." www.dictionary.com. The phrase does not, however, exclude the amount specified. *See* The Compact Edition of the Oxford English Dictionary 1851, Vol. I (1987) (defining "more" as "[a]dditional to the quantity or number specified or implied; an additional amount or number of"). And, when coupled with the adjective "not" the phrase is negated, to wit: not additional to the quantity or number specified. Consequently, and not surprisingly, the district court properly ruled that "not more than ten years" *includes* ten years.

a judge is permitted to find, based on the preponderance of the evidence, the fact of a prior conviction. *United States v. Almendarez-Torres*, 523 U.S. 224, 235 (1998). In *Apprendi* and its progeny, the Supreme Court has uniformly excepted "the fact of a prior conviction" from its general rule that sentence-enhancing facts must be found by a jury and proved beyond a reasonable doubt. *See Booker*, 543 U.S. at 244; *Apprendi*, 530 U.S. at 490. Citing this distinction between prior convictions and other sentence-enhancing factors, we have held that a district court does not violate the Sixth Amendment by determining the fact and nature of a defendant's prior convictions and using these findings to impose an increased sentence under the Armed Career Criminal Act. *See United States v. Barnett*, 398 F.3d 516, 524-25 (6th Cir.), *cert. denied*, 542 U.S. 1163 (2005); *United States v. Beasley,* 442 F.3d 386, 391 (6th Cir. 2006). Martin argues that certain statements in *Shepard v. United States,* 544 U.S. 13 (2005), suggest that *Almendarez-Torres* is no longer good law. However, the continued viability of *Almendarez-Torres* is not for this Court to decide. "Unless and until the Supreme Court takes the next step, [this Court is] bound to follow its current statement of the law on this subject." *Beasley*, 442 F.3d at 392 n. 3 (specifically rejecting the contention that the plurality and concurring opinions in *Shepard* have undermined this Circuit's ruling in *Barnett*). *See also United States v. Alfaro*, 408 F.3d 204, 211 (5th Cir.), *cert. denied*, 546 U.S. 911(2005) ("*Almendarez-Torres* has not been overruled and is still good law.").

Thus, it is clear that there is nothing in controlling Supreme Court or Sixth Circuit precedent that supports Martin's contention that the district court violated his constitutional rights by increasing his sentence under the ACCA.

## IV. CONCLUSION

For all of the foregoing reasons, we AFFIRM the conviction and sentence imposed by the district court.