**NOT RECOMMENDED FOR PUBLICATION**
File Name: 10a0215n.06

No.  08-4342

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Apr 07, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Marvin Miller, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    Merritt, Gibbons, and Rogers, Circuit Judges.

**MERRITT, Circuit Judge.**  Defendant, Marvin Miller, appeals his conviction as a felon in possession of a firearm under 18 U.S.C. § 922(g) and his sentence pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e), which carries a mandatory minimum sentence of 15 years.  As to his conviction, Miller claims the district court erred in refusing to give him additional investigative funds pursuant to the Criminal Justice Act because the funds were necessary to his defense and the failure to award them prejudiced his case.  Miller raises three issues concerning his sentence:  (1) whether the government waived or otherwise negated its right to contend that Miller was subject to Section 924(e) based on its failure to raise the possibility of the enhancement earlier in the process and thereby leading Miller to believe he would be sentenced under the advisory guidelines; (2) whether increasing Miller's sentence above the statutory maximum for conviction under the felon

in possession of a firearm charge based on his prior convictions violates Article III and the Sixth Amendment to the United States Constitution; and (3) whether the district court erred in counting Miller's juvenile conviction as a predicate offense for purposes of the Armed Career Criminal Act because it was "procedurally unsound" and, therefore, in violation of Sixth Circuit law.  For the reasons that follow, we affirm the judgment of the district court.

## I.

Defendant, Marvin Miller, was charged in a one-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  The parties stipulated that Miller has previously been convicted of a crime punishable by a term of imprisonment exceeding one year and that the firearm identified in the indictment had previously traveled in interstate or foreign commerce.  Defendant agreed to a bench trial, which was held on April 30, 2008, and he was found guilty on May 5, 2008.

The sole issue at trial was whether the government  could prove beyond a reasonable doubt that defendant possessed the firearm on or about September 7, 2007, during the execution of a search warrant at Bella's Gentlemen's Club in Toledo, Ohio.  Bella's was known as a place where patrons used drugs and carried weapons.  Two police officers testified at trial that they saw Miller on the patio with a pistol and they saw him toss the pistol on or near a table umbrella behind the patio door to the club.  Defendant was apprehended by police as he tried to climb over the club fence and escape the raid.  Defendant testified at the trial and maintained he did not have a gun at Bella's that night and that the officers could not have seen him throw anything because the patio was unlit and they were looking though the slats in the fence.  He also claims that he was fleeing from the club

owner, not the police. The district court found the officers' testimony credible and found defendant guilty.

After trial, on July 11, 2008, a presentence investigation report was completed. The report noted several prior convictions, including a 1990 juvenile conviction, and it stated that defendant was "potentially subject" to sentencing under the Armed Career Criminal Act, 18 U.S.C. § 924(e), which requires that a defendant convicted of certain firearms violations who has three prior "violent felonies" be given a mandatory 15-year sentence.[1] Presentence Investigation Report at ¶ 5. That report found that defendant was subject to a guideline sentence of 77-96 months. A subsequent presentence investigation report filed on August 7, 2008, found that defendant qualified for the Armed Career Criminal Act enhancement based on three prior violent felony convictions, one of which was the juvenile adjudication in 1990 for a shooting when defendant was 14. Both parties filed multiple sentencing memoranda, and the district court held three sentencing hearings in an effort to resolve whether the juvenile adjudication may provide one of the three required previous offenses for purposes of the Armed Career Criminal Act. The district court ultimately found that the 1990 juvenile conviction qualified as one of the three required "violent felonies" under the Act and

---

[1] 18 U.S.C. § 924(e) provides in relevant part:

> In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, . . . such person shall be . . . imprisoned not less than fifteen years . . . .

sentenced Miller to the mandatory 15-year sentence, almost doubling the guideline-range sentence. Miller appealed both his conviction and sentence.

**II.**

**A. <u>The District Court Did Not Abuse Its Discretion When It Denied Additional Investigatory Funds to Defendant</u>**

Defendant made an oral motion at a pre-trial conference on April 22, 2008, eight days before the trial, for additional funds to hire a private investigator to locate and interview one or two eyewitnesses who had been at Bella's Gentlemen's Club the night of the shooting, one of whom had told police he saw defendant with a gun that night. The next day, defendant renewed the motion. The district court denied the motion orally at the April 22, 2008, hearing, and in a written order dated April 30, 2008. *United States v. Miller*, No. 3:07-CR-569 (N.D. Ohio Apr. 30, 2008) (R.42).

This Court has directed the district courts to authorize services under the Criminal Justice Act, 18 U.S.C. § 3006A, "upon a demonstration that (1) such services are necessary to mount a plausible defense, and (2) without such authorization, the defendant's case would be prejudiced." *United States v. Gilmore,* 282 F.3d 398, 406 (6th Cir. 2002). This court reviews a district court's denial of authorization for abuse of discretion. *Id*.

The district court had previously granted defendant up to $500 for investigative services to aid in his defense. Counsel explained that the additional request was made because she feared that the witness might give her a different statement than he gave the police, thereby necessitating that she become a fact witness in order to impeach the eyewitness and jeopardizing her ability to represent Miller. The district court denied the request because counsel did not make an adequate

showing of why she could not conduct the interviews herself and find feasible ways to keep herself

from also being a trial witness, so the additional funds were not "necessary" and defendant would

not be prejudiced by proceeding to trial without hiring an investigator. Transcript of Pre-trial Conf.

at 8, *United States v. Miller*, No. 3:07CR569 (N.D. Ohio Apr. 22, 2008). We find the reasons stated

by the district court for denying the request for additional funds reasonable and, therefore, find the

district court did not abuse its discretion in denying the motion.

**B. Advance Notice to Defendant of the Possibility of a Sentencing Enhancement Under the Armed Career Criminal Act Is Not Required**

Turning to his sentencing challenges, defendant first contends that the government "waived"

its right to subject him to the Armed Career Criminal Act enhancement under 18 U.S.C. § 924(e)

because the government did not raise the possibility at defendant's indictment, arraignment or at

trial. During this time, the government relied on the statute and guideline range to determine

Miller's likely sentence for a violation of the felon-in-possession-of-a-firearm statute, which has a

mandatory maximum of 10 years. 18 U.S.C. § 922(g). At the arraignment, the government attorney

said, "I have calculated, *obviously as a preliminary matter*, an approximate advisory guideline range

of 63-78 months." Transcript of Arraignment at 4, *United States v. Miller*, No. 3:07CR569 (N.D.

Ohio Nov. 30, 2007) (R.8) (emphasis added). The first actual notice to defendant raising the

possibility of applying the enhancement came on July 11, 2008, two months after conclusion of the

trial, in the Presentence Investigation Report. That document stated that

> It should be noted that based on the defendant's three previous convictions, he is potentially subject to the enhanced sentencing provisions of 18 U.S.C. § 924(e), which requires a mandatory 15-year sentence. However, the government did not file a notice of its intention to pursue an enhanced sentence in this case.

Initial Presentence Investigation Report at ¶ 5, filed July 11, 2008. The government did not file any

objections to this Presentence Investigation Report. A revised presentence investigation report was

filed on August 7, 2008, and included the Section 924(e) enhancement as a sentencing option:

> It should, however, be noted that the first disclosed presentence investigation report completed by this officer and dated July 11, 2008, did not include the mandatory minimum 15 year imprisonment sentence. The first disclosed report did, however, include a disclaimer paragraph five which acknowledged the defendant's three previous violent felony convictions and the potential enhanced sentencing provisions of 18 U.S.C. § 924(e), which requires the mandatory 15-year custody sentence. A reference was made that the government did not file a notice of intent to pursue the enhanced sentence. Upon further reflection of both federal statute [sic] and U.S.S.G. § 4B1.4, Armed Career Offender, the sentencing provision is automatic and there is no need for the government to file a notice of its intention to pursue an enhanced sentence in this case. Therefore, the mandatory minimum is required by both statute and guidelines sentencing provisions.

Presentence Investigation Report ¶ 85, filed Aug. 7, 2008.

This paragraph in the revised presentence investigation report is a correct statement of the

law; there is no requirement that notice be given to the defendant and the district court is *required*

by the plain language of the statute to impose the mandatory sentence where applicable regardless

of whether the government has requested the enhancement. We have previously held that "[f]ormal

notice is not required [to impose the mandatory minimum sentence] under the Armed Career

Criminal Act." *United States v. McGovney*, 270 Fed. App'x 386, 387 (6th Cir. 2008). The

government's failure to provide written notice of its intent to request a sentence under Section 924(e)

does not violate the defendant's constitutional rights. *United States v. Mauldin*, 109 F.3d 1159,

1162-63 (6th Cir. 1997) (government does not need to notify a defendant of its intent to seek an

enhancement under Section 924(e)). In *Mauldin*, the government had listed one of the defendant's

prior state convictions as having a maximum punishment of six years, thereby not qualifying as a predicate offense for Section 924(e). The government later provided information to the sentencing court that the conviction actually carried a maximum sentence of 12 years and, therefore, qualified defendant for the Section 924(e) enhancement. The defendant argued that the government should be bound by its prior notice that defendant did not qualify for the enhancement. We disagreed and held that defendant was subject to the enhancement despite the changed position of the government. *Id.* at 1163.

Indeed, the sentencing court must impose the enhancement *sua sponte* without a request by the government where applicable. *See United States v. Johnson*, 973 F.2d 857, 860 (10th Cir. 1992). This holding is based upon the "shall impose" language in Section 924(e)(1) and the fact that "the statute clearly indicates that the intent of Congress was to require mandatory enhancement [and] should automatically be applied by the courts regardless of whether the Government affirmatively seeks such enhancement." *United States v. Cobia*, 41 F.3d 1473, 1475 (11th Cir. 1995).

The defendant conceded this point in his brief but contends, in what is essentially an equitable estoppel argument, that it is unfair to defendant to go through the entire pre-trial and trial proceedings believing he will receive a guideline-range sentence for his conviction under Section 922(g) only to find out during the sentencing process that he is likely facing a mandatory minimum sentence of 15 years. However, as acknowledged by defendant, there is no requirement that the government raise the possibility of the enhancement early in the proceeding or anything that prohibits the government from changing its position on sentencing up to the time of sentencing. All that due process requires is that a defendant have access to a record of his prior convictions and an

opportunity to challenge them before being sentenced. *See Mauldin,* 109 F.3d at 1162-63. Here, the defendant had actual notice almost three months prior to his sentencing hearing – at the very latest – in compliance with the requirements of procedural due process. *See Oyler v. Boles,* 368 U.S. 448, 452 (1962) ("[A] defendant must receive reasonable notice and an opportunity to be heard relative to [a] recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense."). Nothing in the record indicates that defendant was treated "unfairly" by not knowing earlier in the process that he might be subject to the sentencing enhancement under the Armed Career Criminal Act.

**C. The Application of Section 924(e) in this Case Does Not Violate Article III or the Sixth Amendment to the United States Constitution**

Miller contends that because the district court concluded that he had three previous qualifying convictions that subjected him to an enhanced sentence under 18 U.S.C. § 924(e), the charge should have been in the indictment and proven beyond a reasonable doubt by the fact-finder at trial. *Apprendi v. New Jersey*, 530 U.S. 466, 492 (2000). Miller did not raise this argument below, and it is therefore reviewed for plain error.

*Apprendi* excepts the fact of a prior conviction, which may be found by a judge at sentencing by a preponderance of the evidence based on *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). The Supreme Court has affirmed that *Almendarez-Torres* is still good law after *Apprendi*. *Shepard v. United States,* 544 U.S. 13, 24 (2005); *United States v. Booker*, 543 U.S. 220, 244 (2005); *Blakely v. Washington*, 542 U.S. 296, 301 (2004). The Sixth Circuit has also rejected the argument put forth by Miller here. *See, e.g., United States v. Martin*, 526 F.3d 926, 941-42 (6th Cir. 2008).

Miller concedes in his opening brief that the law is against him on this issue, and he does not raise it again in his Reply brief. Until the Supreme Court overturns its previous holdings on this issue, Miller's challenge is without merit. While defendant hints that the Supreme Court's recent decision in *Shepard* casts doubt on the continuing validity of *Almendarez-Torres* as precedent, he concedes that unless the Supreme Court explicitly overrules *Almendarez-Torres*, it will continue to be followed by this Court

**D. Juvenile Convictions May Serve as Predicate Offenses Under the Armed Career Criminal Act**

Defendant's final issue on appeal is a due process challenge to the district court's finding that a 1990 juvenile conviction where the then-14-year-old Miller pled guilty to felonious assault using a firearm qualifies as one of the necessary three violent prior convictions to enhance a sentence under the Armed Career Criminal Act. Miller does not dispute the existence of the juvenile conviction, but claims the necessary procedural safeguards were not in place in his proceeding and it did not comport with due process and, therefore, cannot be used as a qualifying predicate offense.

Once a district court finds by a preponderance of the evidence that a defendant has committed at least three prior violent felonies, the defendant must be sentenced pursuant to 18 U.S.C. § 924(e). The Act mandates a 15-year minimum sentence for certain federal firearms violations where the defendant has three prior convictions, in state or federal court, for a "violent felony." 18 U.S.C. § 924(e)(1). A "violent felony" is defined as:

> (B) . . . any crime punishable by imprisonment for a term exceeding one year, *or an act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult,* that --

-9-

> (I) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (C) The term "conviction" includes a finding that a person has committed an act of juvenile delinquency involving a violent felony.

18 U.S.C. § 924(e)(2) (emphasis added).

It should first be noted that the language of the statute plainly states that a conviction in juvenile proceedings may count toward the prior three violent felonies necessary to impose the 15-year mandatory sentence pursuant to the Armed Career Criminal Act, so any challenge simply to the fact of use of a juvenile conviction cannot stand. Conceding this point due to the plain language of the statute, defendant claims that his 1990 adjudication was not "procedurally sound" as required by Sixth Circuit law before it may serve as a predicate offense for purposes of the Armed Career Criminal Act.

This Court directly addressed the use of juvenile proceedings as predicates to impose the mandatory 15-year sentence under Section 924(e) in *United States v. Crowell*, 493 F.3d 744 (6th Cir. 2007). *Crowell* explicitly held that the use of "procedurally sound" juvenile adjudications as Armed Career Criminal Act predicates does not violate due process. *Id*. at 750. In *Crowell*, the juvenile defendant contested the use of a juvenile conviction for purposes of Section 924(e), arguing that the conviction never occurred, or, if it did, that its use violated due process and the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Id*. at 748-49. In response, the government provided written proof of Crowell's juvenile record and the testimony of the detective who prosecuted the juvenile charge. *Id*. In upholding the use of the juvenile adjudication, *Crowell*

found no indication that the defendant was not afforded appropriate due process in his juvenile adjudication. *Id*. at 750-51.

*Crowell* holds that "the use of a procedurally sound juvenile adjudication as [an Armed Career Criminal Act] predicate does not violate due process," even though juvenile adjudications are not afforded the full panoply of procedural rights provided in an adversarial adult adjudication. *Id*. at 750. Rather than demand that juvenile adjudications meet a "constitutional checklist" of rights in order to count as a predicate under Section 924(e), *Crowell* instructs judges to "consider the reality of the actual juvenile adjudication to determine whether it is sufficiently reliable so as to not offend constitutional rights . . . ." *Id*. (internal citations omitted).

Miller points to several examples from his adjudication to demonstrate that it was not "procedurally sound": he did not know he had a defense attorney and thought that his attorney was a detective at the time and neither he nor his mother or grandmother met with an attorney before the proceeding; neither his mother nor his grandmother waived any of his rights, as would have been proper for a juvenile; he was charged and pled guilty on the same day; he was questioned by his attorney (who he thought was a detective) instead of by the presiding officer, a juvenile court magistrate; he did not have effective assistance of counsel and he did not know then that by pleading guilty to the felonious assault he might someday be subject to the Armed Career Criminal Act.

Due to the confusion surrounding the 1990 adjudication, the district court conducted three separate sentencing hearings on the matter between August and October 2008. At the September 30, 2008, sentencing hearing, the defendant called as a witness Martin Mohler, a lawyer who represented juveniles extensively in the Ohio courts during the 1990s. Mr. Mohler was not Miller's defense

lawyer in the 1990 juvenile adjudication and was called as an "expert witness" of sorts. Mr. Mohler testified that it was unusual for the defense lawyer, instead of the presiding official, to conduct the questioning of the juvenile in the juvenile proceeding as happened in Miller's juvenile adjudication. Transcript of Sentencing Hearing at 44-45, *United States v. Miller*, No. 3:07-CR-569 (N.D. Ohio Sept. 30, 2008) (R.59). Mohler also expressed concern that Miller did not recall meeting with his attorney before he pled guilty to the shooting, *id.* at 45, and that the transcript did not reflect that Miller's mother or grandmother waived Miller's rights. *Id.* at 49. However, Mohler did testify that there was nothing in the "bare transcript" of the proceeding that reflects that Miller did not understand what he was doing or that he did not otherwise give a knowing and voluntary guilty plea. *Id.* at 48.

Based on the testimony of Mohler at the September 30 sentencing hearing and the sentencing memoranda submitted by the parties, the district court judge held another sentencing hearing on October 2, 2008. This hearing can only be described as an almost full evidentiary hearing surrounding Miller's 1990 juvenile adjudication. The docket sheet and transcript from the juvenile proceeding were introduced as evidence, and all the individuals who took part in the juvenile proceeding in 1990 were available to testify: Miller's attorney in the 1990 juvenile adjudication, Richard Blake; the juvenile court magistrate who presided over the 1990 proceeding, John Yerman; the Lucas County, Ohio, prosecutor for the 1990 juvenile proceeding, Jennifer Bainbridge; and Miller's mother and his grandmother. *See* Transcript of Sentencing Hearing, No. 3:07-CR-569 (N.D. Ohio Oct. 2, 2008) (R.60). All witnesses were examined and cross-examined by counsel, and the district court judge also interjected with many questions during the hearing.

Yerman testified that as the juvenile court magistrate presiding over Miller's 1990 adjudication, "I have no doubt that [Miller] was afforded due process . . . in 1990." *Id.* at 8. Yerman also testified that it was his practice to discuss the matter with anyone present during the proceeding who could shed light on the situation, and he did talk to Miller's mother and grandmother at the time. He said that in 1990 he had "at least a one- or two-year association with Mr. Miller [alluding to Miller's previous run-ins with the juvenile court system], and I've talked to his mother and grandmother before regarding these things. I just don't remember with particularity this conversation." *Id.* at 9. The district court judge asked Yerman if it was "unusual" for there to be a plea within a day or two of a juvenile arrest in a serious charge such as the one Miller was facing in 1990. Yerman explained that the juvenile rules require a hearing and adjudication within 10 days of arrest. *Id.* at 11. He testified that it would not be unusual for a juvenile defendant who was familiar with the criminal justice system (as Miller unfortunately was, even at age 14) to be charged and adjudicated on the same day, even for a serious charge. *Id.*

Jennifer Bainbridge, who prosecuted Miller in 1990, testified that Miller's adjudication for the shooting went "just how most of the proceedings occurred at the time." *Id.* at 14. She also testified, in response to a question from the district court judge, that it was not uncommon for the defense attorney, instead of the presiding officer, to question the juvenile under oath. *Id.*

Richard Blake, Miller's defense attorney for the juvenile adjudication in 1990, also testified. He stated that he did not have much independent recollection of the actual proceeding but that the documents and transcript from the proceeding helped to refresh his memory somewhat. He testified that he did remember that Miller's mother and grandmother were very interested in him and he does

remember having discussions with them outside of the hearing, which he said was also his usual

practice with juveniles. When asked by the court if there "was any doubt in his mind at that time that

[Miller] understood the purpose of those proceedings," he answered, "there would be no doubt in

my mind that [Miller understood] what we were up to at that time." *Id.* at 19.

After hearing testimony from the witnesses, the district court ruled that the juvenile

adjudication from 1990 "satisfies the legal requirements" for that adjudication to be used as one of

the three predicate offenses under the Armed Career Criminal Act. He noted that the transcript

reflects that the mother and grandmother were present at the adjudication and that, according to the

witness testimony at the 2008 hearing, they would have had the opportunity to speak. The defendant

also spoke on his own behalf at the juvenile adjudication, responded to questions by the magistrate

and his attorney, and indicated that he knew what was happening. The district court also did not find

credible, based on the transcript of the 1990 adjudication and the testimony in 2008 by the persons

involved in 1990, defendant's statement that he thought his attorney was a detective.

The district court sentenced Miller to the mandatory minimum 15-year sentence under the

Armed Career Criminal Act. In handing down the sentence, the district court pointed to a number

of factors supporting the 15-year sentence. The judge noted the mandatory language of the Armed

Career Criminal statute, but also noted Congress' intent to punish recidivism where firearms are

used, including the plain language of the Act instructing sentencing courts to count serious juvenile

offenses as qualifying predicate offenses. The district court also remarked at several points

defendant's failure to stay out of trouble, even after his juvenile convictions. The judge pointed to

defendant's violent criminal history, including three previous convictions for felonious assault and

voluntary manslaughter and attempted felonious assault, as well as several probation violations. The district court judge also took into account the fact that defendant was 32 years old and had no verifiable employment and no history of a stable job.

We agree with the district court that the 1990 juvenile proceeding sufficiently comported with due process to count as a predicate offense for purposes of the Armed Career Criminal Act. The 2008 sentencing hearings conducted by the district court in this case included testimony from nearly every individual who took part in the 1990 adjudication of defendant. The testimony demonstrates that defendant was represented by counsel, understood the nature of the proceedings, and had contact with his mother and grandmother during the process. Accordingly, for the reasons set forth above, we affirm the judgment of the district court.