RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0302p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

     *v.*

TOBY T. STUDABAKER,

                *Defendant-Appellant.*

Nos. 08-1614/1615

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
Nos. 03-00291-001; 07-00267-001—
Paul Lewis Maloney, Chief District Judge.

Argued: August 5, 2009

Decided and Filed: August 24, 2009

Before: SILER, MOORE, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Kerry M. Donahue, BELLINGER & DONAHUE, Dublin, Ohio, for Appellant.
Daniel Y. Mekaru, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan,
for Appellee. **ON BRIEF:** Kerry M. Donahue, BELLINGER & DONAHUE, Dublin, Ohio,
for Appellant. Daniel Y. Mekaru, ASSISTANT UNITED STATES ATTORNEY, Grand
Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. Toby Studabaker pleaded guilty to
causing the foreign travel of a minor with the intent to engage in criminal sexual activity and
to possessing and attempting to possess child pornography. The district court sentenced
Studabaker to 136 months of incarceration for the foreign-travel charge and 87 months of
incarceration for the child-pornography charge, to run concurrently. On appeal, Studabaker
argues that the district court lacked jurisdiction over the child-pornography offense because

1

there was an insufficient factual basis to support his guilty plea, that his prosecution violated double jeopardy, that the district court erred when it sentenced him without considering his prior incarceration, and that the district court imposed an above-Guidelines sentence without a sufficient factual basis.

For the reasons explained herein, we **AFFIRM** Studabaker's convictions and sentence.

## I. FACTS AND PROCEDURE

In 2002, Studabaker, then a thirty-year-old Marine, began communicating with SP[1], then an eleven-year-old girl living outside of Manchester, England, through Neopets.com, a website that allows users to create and care for virtual pets and to interact with other virtual-pet owners. For about a year, Studabaker and SP communicated through Neopets as well as via e-mail, mail, and the telephone. They exchanged pictures and spoke using a webcam. Their interactions grew increasingly sexually explicit. On June 30, 2003, Studabaker was honorably discharged from the Marines and moved from Camp Lejeune, North Carolina, to live with his brother and sister-in-law in Three Rivers, Michigan. After his move, Studabaker continued to communicate with SP.

On July 7, 2003, Studabaker contacted a travel agent and bought a plane ticket to Manchester, England. He told the travel agent that he was going to meet his twelve-year-old niece in Manchester and travel with her to France. Studabaker gave the travel agent SP's name and social security number, and purchased plane tickets for himself and SP to travel from Manchester to France. Studabaker also sent a money order for $150 to SP for her to use to travel to the airport. On July 12, 2003, Studabaker flew to Manchester and met SP at the airport. They flew to Paris, France, where Studabaker rented a hotel room and had sexual intercourse with SP (who was now twelve years old). After SP's parents reported her missing, a search of her room and computer revealed her correspondence with Studabaker and their travel plans.

---

[1]Because the victim is a minor, she is identified throughout by the initials "SP."

While searching for SP, investigators found a computer that Studabaker owned while he was a Marine. Before he left Camp Lejeune, Studabaker sold this computer to a civilian. When he saw the news about Studabaker, the purchaser told military commanders that after he bought the computer from Studabaker, he found files containing child pornography on the computer. Investigators recovered this computer and confirmed the purchaser's reports that the computer contained pornographic images of minors.

On July 15, 2003, an international arrest warrant was issued for Studabaker, and newspapers began to report that he was involved in SP's abduction. At this time, Studabaker and SP had traveled from France to Germany. On July 16, 2003, after reading these reports and speaking with his brother and sister-in-law, Studabaker put SP on a flight from Germany to Manchester and surrendered to German authorities. While in German custody, Studabaker submitted to a DNA test that revealed that his DNA matched the DNA that was found in SP's underwear when she returned to England. On August 21, 2003, Studabaker was extradited to England, where he was convicted of Child Abduction and Incitement to Gross Indecency and sentenced to 4-1/2 years of incarceration.

Studabaker served his sentence in England before being deported to the United States on June 4, 2007. When Studabaker returned to the United States, there were two indictments pending against him. The first indictment was filed in the United States District Court for the Western District of Michigan on December 17, 2003, and charged Studabaker with transporting a child for sexual exploitation, traveling for the purpose of sexually exploiting a child, traveling and sexually exploiting a child in a foreign country, and enticing a child for sexual exploitation. On May 26, 2004, Studabaker was indicted in the United States District Court for the Eastern District of North Carolina. This indictment included three charges: (1) that Studabaker attempted to and did knowingly receive images of child pornography shipped and transported in interstate and foreign commerce; (2) that he possessed a computer hard drive containing images of child pornography that had been transported in interstate and foreign commerce and that

had been produced using materials that had been transported in interstate and foreign commerce; and (3) that he knowingly took and received from an interactive computer service obscene matter of indecent character which had been carried in interstate and foreign commerce.

Studabaker sought to plead guilty to both cases in the Western District of Michigan. The North Carolina indictment was transferred to the Western District of Michigan pursuant to Federal Rule of Criminal Procedure 20. On November 20, 2007, Studabaker appeared before a magistrate judge in the Western District of Michigan and pleaded guilty to both indictments. Studabaker pleaded guilty to count 1 of the Michigan indictment which charged him with causing the foreign travel of a minor with the intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a) and to count 2 of the North Carolina indictment which charged him with possessing and attempting to possess child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

The Presentence Investigation Report ("PSR") indicated that Studabaker's total offense level was 27 and that his criminal history category was I, yielding a Guidelines range of 70 to 87 months of incarceration. The government filed a sentencing memorandum arguing for a five-level enhancement under U.S.S.G. § 4B1.5(b) because Studabaker was a repeat and dangerous sex offender against minors. Alternatively, the government requested an upward departure based on U.S.S.G. § 4A1.3 because Studabaker's criminal history category did not reflect the seriousness of his past conduct, or an upward variance. In support of this memorandum, the government submitted a letter from SP's parents, news articles regarding the case, a card that Studabaker tried to send to SP after he was arrested, information about Neopets, an affidavit from a ten-year-old in Australia with whom Studabaker had communicated through Neopets, and a police report from 1998 regarding a report that Studabaker had engaged in inappropriate sexual contact with his niece. After receiving this memorandum, the district court filed a notice that it was considering an upward departure and/or variance. Studabaker responded with a memorandum arguing that there were insufficient facts to

support an upward departure or variance and that the district court should depart downward from the Guidelines to account for the time that he spent in prison in England.

At the sentencing hearing, the district court found that Studabaker's total offense level was 27, his criminal history category was I, and his Guidelines range was 70 to 87 months of incarceration. The district court rejected the government's motion for a sentencing enhancement based on § 4B1.5 because there was insufficient evidence to support such an increase. Studabaker stated that he had no objections to the PSR other than the motion for a downward departure made in his sentencing memorandum. The government responded that Studabaker was not entitled to a downward departure and urged the district court to impose an above-Guidelines sentence because the Guidelines range did not adequately reflect Studabaker's history and pattern of seeking inappropriate relationships with children. In support of this argument, the government cited a number of incidents: an internet relationship that Studabaker had with a ten-year-old in Australia, a relationship he had with two girls in Michigan through a soldier pen-pal program, a possible relationship that Studabaker was trying to cultivate with the daughter of a handicapped woman he had become involved with after his arrest, and the fact that Studabaker tried to correspond with SP after his arrest. Studabaker responded that the government had little evidence to support these serious allegations, that his time in prison in England should be considered in his favor, and that the Guidelines properly accounted for his conduct. Finally, Studabaker addressed the district court, acknowledged his conduct, and asserted that although he knew about the child pornography on his computer, he did not download the images himself.

The district court reviewed the facts and noted that the court did not believe Studabaker's denial that he had downloaded the child pornography or his denial that he had been attracted to children other than SP, and that these denials caused the court concern that Studabaker was likely to reoffend. The district court specifically stated that because there was insufficient evidence, the court was not going to consider the uncharged conduct related to Studabaker's nieces, the children he corresponded with while in the military, or the child of the woman with whom he had recently become

involved. However, the district court found Studabaker's internet-based conduct with the child in Australia relevant to sentencing. Ultimately, the district court increased Studabaker's Guidelines range for the foreign-travel charge by five levels: two levels under § 2A3.2(b)(2)(B) because the 2003 Guidelines applicable to Studabaker did not adequately consider the undue influence Studabaker had over SP; one level because the Guidelines failed to account for the victimization of SP's parents; and two levels to protect society and to deter Studabaker and others.

The district court stated that, with this five-level increase, the appropriate Guidelines range for the foreign-travel charge was 135 to 168 months of incarceration. The district court explained that it would have sentenced Studabaker at the upper end of this range, but the court felt that a reduction to 144 months of imprisonment, the middle of the range, was appropriate to account for Studabaker's prior incarceration. After the district court announced concurrent sentences of 144 months of imprisonment on the foreign-travel count and 87 months of imprisonment on the child-pornography count, Studabaker's counsel noted that a five-level increase would make Studabaker's Guidelines range 121 to 151 months of imprisonment rather than 135 to 168 months of imprisonment as the district court had stated. The district court addressed its error by changing Studabaker's sentence for the foreign-travel count to 136 months of imprisonment, the middle of the appropriate range based on a five-level increase.

On appeal, Studabaker raises four issues. First, Studabaker asserts that the district court did not have jurisdiction over the child-pornography charge because the factual basis for his plea did not establish the interstate nexus necessary to make his conduct a federal crime. Second, he argues that his prosecution for charges related to his conduct with SP violated double-jeopardy principles because he had been convicted in England based on that conduct. Third, Studabaker states that his sentence is unreasonable because the district court failed to consider the fact that he had already served a 4-1/2 year sentence in England. Finally, Studabaker claims that the district court erred by imposing an upward departure that was not based on sufficient evidence.

## II.  ANALYSIS

### A.  Sufficiency of the Evidence

Studabaker's first argument on appeal concerns the child-pornography charge, and he frames the issue as a jurisdictional question.  At his plea hearing, Studabaker admitted that although he allegedly did not download the images himself, he found images of child pornography on his computer before he sold it.  He explained that he attempted to destroy these images before selling the computer.  He also stated that he had no reason to dispute the government's assertion that his computer's hard drive had been manufactured outside the United States.  On appeal, Studabaker asserts that the factual basis for his plea agreement did not establish an interstate nexus.  Relying on this assertion, Studabaker argues that his plea rested on insufficient evidence, that without proof of this nexus the district court lacked jurisdiction to accept his plea, and that the statute under which he was convicted is unconstitutional if it allows a conviction such as his without proof of an interstate nexus.

"Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008) (quoting *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991)). Studabaker does not argue that his plea was involuntary, and the only issue he reserved for appeal was a potential above-Guidelines sentence.  "This Circuit has specifically interpreted Rule 11(a)(2) to bar a defendant's challenge that evidence was insufficient to support a conviction, absent a conditional plea that specified the issue for preservation on appeal." *Id.*  Because Studabaker did not reserve the right to appeal the sufficiency of the evidence, he has waived his argument that the government did not provide a sufficient factual basis to support his plea.

Studabaker argues that this claim is not waived because the existence of an interstate nexus is a jurisdictional issue that is not waived by a guilty plea.  However, in a recent case involving the same argument in the context of a different federal statute, we held to the contrary.  *See id.*  In *Martin*, the defendant pleaded guilty to being a felon

in possession of a firearm, admitted the interstate nexus element, and later appealed his conviction and argued that "his conditional guilty plea did not waive his right to challenge on appeal the insufficiency of evidence establishing that the gun upon which his felon-in-possession charge was predicated traveled in, or affected, interstate commerce because this issue is a jurisdictional one." *Id.* at 933. This court rejected Martin's argument and explained that "while courts frequently call the interstate commerce nexus requirement a 'jurisdictional element,' it is jurisdictional only in the sense that without that nexus there can be no federal crime; it does not affect a court's power to adjudicate a case." *Id.* Further, "[t]o successfully challenge the district court's jurisdiction, a defendant who enters a guilty plea must establish that the face of the indictment failed to charge the elements of a federal offense." *Id.* at 934.

Studabaker has not provided any argument that would distinguish his case from *Martin*, and he does not argue that the indictment fails to charge all of the required elements. Accordingly, we hold that Studabaker has waived appellate review of the sufficiency of the evidence underlying the interstate nexus supporting his federal conviction, and we do not consider the merits of this claim.

**B. Double Jeopardy**

Studabaker argues that his prosecution on the foreign-travel charge violates the Double Jeopardy Clause because his conviction and incarceration in England were based on the same conduct. The Double Jeopardy Clause typically does not bar "suits by separate sovereigns, even if both are criminal suits for the same offense." *United States v. Louisville Edible Oil Products, Inc.*, 926 F.2d 584, 587 (6th Cir. 1991). "In applying the dual sovereignty doctrine, then, the crucial determination is whether the two entities that seek successively to prosecute a defendant for the same course of conduct can be termed separate sovereigns. This determination turns on whether the two entities draw their authority to punish the offender from distinct sources of power." *Heath v. Alabama*, 474 U.S. 82, 88 (1985). Obviously, under this test, the United States and England are separate sovereigns such that the Double Jeopardy Clause did not bar Studabaker's federal prosecution.

## C.  Sentencing

Studabaker argues that his sentence was unreasonable because the district court failed to reduce his sentence to account for the term of incarceration that he had already served in England and because the district court imposed a sentencing increase that allegedly was not supported by sufficient evidence.  Studabaker did not waive his right to raise these arguments as his plea agreement specifically reserves his right to appeal an above-Guidelines sentence.  Additionally, Studabaker has preserved these issues for appeal because his counsel objected to a sentence that did not account for the time Studabaker had spent in prison in England and objected to the upward departure imposed by the district court.  *See United States v. Herrera-Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009).  This court "review[s] a district court's sentencing determination, under a deferential abuse-of-discretion standard, for reasonableness."  *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (internal quotation marks omitted).  Reasonableness review includes two aspects—procedural and substantive reasonableness:

> Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard.  It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.  Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.  When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.  If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness.  But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness.  It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.  The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

*Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597 (2007) (citation omitted).

A sentence is procedurally reasonable only if the district court "(1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range." *Bolds*, 511 F.3d at 581. Both of Studabaker's arguments concern the procedural reasonableness of his sentence, and we consider each in turn.[2]

First, Studabaker argues that the district court erred by neglecting to consider the fact that he had already served time in prison for the conduct underlying the foreign-travel charge and by failing to reduce his sentence accordingly. Studabaker asserts that this failure resulted in a disproportionate sentence because the Guidelines require the district court to account for an undischarged term of imprisonment when imposing sentence but do not require the court to consider a fully discharged term of imprisonment. U.S.S.G. § 5G1.3. Studabaker acknowledges that § 5G1.3 did not require the district court to reduce his sentence to account for his incarceration in England, but urges this panel to find that the district court erred in failing to do so because the resulting sentence was disproportionate.

We conclude that the district court did not abuse its discretion when it rejected Studabaker's argument that his sentence should be reduced to account for his prior incarceration. The district court considered Studabaker's argument for a reduced sentence, and both parties were given the opportunity to present argument on this point. The district court recognized that it had the discretion to depart downward if it chose.

---

[2]Studabaker does not argue that his sentence was substantively unreasonable. His two sentencing-related arguments address the procedural reasonableness of his sentence. However, even if Studabaker contested the substantive reasonableness of his sentence, he would be unlikely to succeed. Although Studabaker's sentence is outside the Guidelines range and is not presumed reasonable, Studabaker has not shown that his sentence is unreasonable. As discussed below, the district court carefully explained the chosen sentence and considered the arguments made by Studabaker and the government.

*See Herrera-Zuniga*, 571 F.3d at 583-84.  Critically, once the district court settled on a sentencing range that it believed to be appropriate, it considered and accounted for Studabaker's prior incarceration.  Once the district court settled on a Guidelines range, the district court stated:

> [W]hich leaves me with the point well taken by Mr. Denenfeld that the defendant has served some period of time in Great Britain for conduct which is addressed in the count of conviction in Count One of 03-291. And I think that calls for some reduction from the upper level of the guideline range because, if that factor had not been taken into account, I would have sentenced at the upper end of that guideline range . . ., but I will move to the middle of that guideline range to account for the fact that Mr. Studabaker has served time in prison in Great Britain.

Sent'g Tr. at 47.  This statement illustrates the fact that the district court considered Studabaker's argument, properly found that his prior incarceration could be factored in the determination of Studabaker's sentence, and considered the prior incarceration in fashioning a sentence.  Given these facts, we conclude that the district court did not abuse its discretion, and Studabaker's sentence was not procedurally unreasonable.

Studabaker also argues that the district court erroneously enhanced his sentence based on insufficient evidence.  The district court explained its five-level Guidelines increase as follows:  (1) two levels under § 2A3.2(b)(2)(B)(ii) to account for the undue influence that Studabaker exerted over SP; (2) one level to account for the suffering of SP's parents; and (3) two levels to protect society and to deter Studabaker and others.  The fact that the district court identified all of these increases as "departures" when it seems that the second two are variances based on 18 U.S.C. § 3553(a) rather than departures based on the Guidelines does not make the sentence unreasonable.  *Herrera-Zuniga*, 571 F.3d at 586-87.  Instead, considering the overall adequacy of the district court's explanation, we conclude that the district court did not abuse its discretion in imposing an increased sentence.  *Id.*  The district court gave notice that it was considering an above-Guidelines sentence, clearly explained why it felt an increased sentence was necessary, and identified specific factors that were based on record evidence while disregarding those allegations that the court believed were not

sufficiently supported.[3]  *Id.* at 36-47, ROA at 58; *see also United States v. Moncivais*, 492 F.3d 652, 658 (6th Cir. 2007) (noting that evidence must meet a "minimum indicia-of-reliability" standard to be admissible at sentencing).  Accordingly, we conclude that the district court did not abuse its discretion, and Studabaker's sentence was procedurally reasonable.

### III. CONCLUSION

Because we conclude that Studabaker's prosecution did not violate the Double Jeopardy Clause, that his sentence was procedurally reasonable, and that he waived his argument that his plea was based on insufficient evidence, we **AFFIRM** Studabaker's convictions and sentence.

---

[3]The fact that the district court changed Studabaker's sentence after being informed that the Guidelines range after a five-level increase would be 121 to 151 months rather than 135 to 168 months is irrelevant.  The district court explained why it believed that a five-level increase was appropriate and why it chose a sentence in the middle of that range.  The fact that the court initially used the wrong range but corrected the range does not indicate an abuse of discretion.