**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0764n.06

**No. 08-6340**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 03, 2009**

LEONARD GREEN, Clerk

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff-Appellant,** | |
| **v.** | **ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE** |
| **WILLIAM MARK CORUM,** | **WESTERN DISTRICT OF KENTUCKY** |
| **Defendant-Appellee.** | |

_____/

**BEFORE:**     **RYAN, COLE, and CLAY, Circuit Judges**.

**CLAY, Circuit Judge.** In this appeal from a re-sentencing under Fed. R. Crim. P. 35(a), the government argues that the district court was without authority to re-sentence Defendant, William Mark Corum, because the district court had not committed clear error in the original sentencing on August 28, 2008. The government contends that the district court improperly re-opened Defendant's sentence based upon the district court's finding that it was clear error to have failed to individually assess the Defendant's post-arrest psychiatric treatment under 18 U.S.C. § 3553(a)(1). For the reasons set forth below, we hold that the district court had jurisdiction under Fed. R. Crim. P. 35(a) to re-sentence Defendant, and we **AFFIRM** the district court's order.

## BACKGROUND

Defendant was charged in connection with an Immigration and Customs Enforcement ("ICE") investigation that began with the arrest of Defendant's internet coorespondent in London, England for production and distribution of child pornography. Defendant pled guilty to three counts of knowingly distributing, receiving, and possessing child pornography in violation of 18 U.S.C. §§ 2252(a)(1), 2252(a)(2), 2252(a)(4)(B), 2252(b)(1), and 2252(b)(2) without benefit of a plea agreement on February 20, 2008.

The district court originally sentenced Defendant on August 28, 2008 to a total of 210 months incarceration – 210 months for Counts 1 and 2 and 120 months for Count 3, to be served concurrently. On September 2, 2008, the district court notified both the government and Defendant that it required them to appear at 4:00 pm on September 3, 2008 to discuss the case. The court then informed counsel that it planned to correct Defendant's sentence under Fed. R. Crim. P. 35(a) after having "realized that the sentence that [it] imposed . . . was clear error." (ROA at 454). The government requested time to brief its opposition to the proposed sentence correction, but after consulting the federal rules, the court determined that it strictly must act within the seven day time limit and so only gave the parties fifteen minutes to quickly find caselaw supporting their positions. The court then re-sentenced Defendant to 174 months total incarceration – 174 months, for both Counts 1 and 2, and 120 months, for Count 3, to be served concurrently. After the court issued its amended sentence, the government renewed its objection that the court did not have jurisdiction under Fed. R. Crim. P. 35(a) to re-sentence Defendant.

Prior to the filing of formal charges against Defendant, on August 23, 2007, ICE agents executed a search warrant at Defendant's home and interviewed Defendant about his activities involving child pornography. He was cooperative and admitted that he had sent, received, and possessed many child pornographic images, estimating "his collection of child pornography at approximately 1000 images." (ROA at 313). "Within a few days of being arrested," Defendant entered treatment with Shea Reed, a licensed professional clinic counselor. (ROA at 169, 254).

During the time between Defendant's arrest and sentencing, which was approximately a year, he continued treatment with Shea Reed for addiction to child pornography. Her treatment program involved

> individual and group therapy with the goals being identifying his thought and behavior patterns that developed into his use of child pornography and a look at his life time factors that contributed to that behavior; and also, development of a relapse prevention plan focused on preventing him from using child pornography in the future.

(ROA at 260). The overall goal of Defendant's treatment was to "reduce to zero his use of child pornography." (Id.). Reed characterized Defendant as committed to his treatment, motivated, and forthcoming about his feelings such that he was making excellent progress. Another professional who evaluated Defendant's behavior characterized his addiction to child pornography as part of a "long, gradually-worsening, increasingly-anguishing addition to pornography." (ROA at 165). Before his arrest, Defendant claims he had attempted to curtail his addiction, but his efforts failed without the treatment he later received.

Defendant was also treated for chronic depression in the same time period that he sought treatment for his child pornography addiction. Dr. Walter Butler, a forensic psychologist, prescribed

3

anti-depressants for Defendant. Butler's evaluation was that Defendant did not suffer from pedophilia because he did not physically act on his impulses, but that he was a voyeur of child pornography in part due to his troubled childhood and his addictive personality, inherited from an alcoholic father.

Defendant's rehabilitative efforts to seek effective treatment for his child pornography were purportedly quite extensive. Even the government recognized in the first sentencing hearing that he "made effort to seek counseling and treatment and apparently has made some steps in the right direction with regard to that and that is good." (ROA at 413).

During the original sentencing hearing on August 28, 2008, the district court began his analysis with calculations under the Sentencing Guidelines. Defendant's total offense level was calculated as 37 with a criminal history category of I, leading to a guidelines sentence of 210 to 262 months. He received enhancements under § 2G2.2(b) for the young age of the pictured children, for distribution, for the images that "involve conduct which is clearly involving or likely to involve pain," for the number of images, and for the use of a computer. (ROA at 436). Defendant received a reduction under § 3E1.1(a) of the guidelines for accepting responsibility for his crimes.

The district court then went on to consider the relevant factors under 18 U.S.C. § 3553(a). However, the district court's discussion of Defendant's treatment in the original sentencing supports its later characterization that it "declined to consider it because of a policy reason to avoid sending messages to manipulative defendants, fearing that this would . . . simply become a treatment snowball that would get ever bigger as it rolled." (ROA at 437). The district court noted that

Defendant sought immediate treatment after his arrest and that it was a positive step for Defendant to explore the root cause of his addiction, but then noted that

> giving credit for a person who gets immediate treatment is to my mind somewhat difficult because some people can't afford treatment. And it would have a tendency, if adopted as a policy, to encourage ever more resentencing treatments in an effort to somehow stand out from the crowd here.

(ROA at 439-40). While discussing its wariness of considering post-arrest treatment efforts, the district court discussed how Defendant came from a dysfunctional family and has an addiction to pornography, but then said "the court basically assumes that people who are guilty of these types of crimes have some problems." (ROA at 440). As a result, the court did not take the treatment Defendant received into consideration in sentencing him.

In the second sentencing hearing on September 3, 2008, the court said that it had committed clear error by using a "policy consideration which is inappropriate because it does not give individualized consideration to this defendant for what he did for himself individually in this case after his apprehension but before his sentencing." (ROA at 457). The district judge said that he made that prior ruling "to avoid sending messages to manipulative defendants." (Id.) The court "declined to consider [Defendant's post-arrest treatment], even though it was an aspect of his character, simply because [it] was afraid of doing so." (ROA at 458).

The court then went on to discuss its appraisal of Defendant's efforts at rehabilitation through his post-arrest treatment. The district judge found Defendant's treatment efforts to show that he was "motivated" and that he was "significantly invested in his treatment." (ROA at 456). Continuing, the district court found that

> he has made valuable progress toward mental health, that he has continued the treatment while he was on bond and that he did so, I think, genuinely trying . . . [to] deal with the abnormality that he clearly has in committing the crimes of conviction. I think that the defendant has made efforts and has addressed this in a fashion that is quite a bit beyond the average person.

(Id.). Finally the court concluded that had it properly considered Defendant's treatment, it would have imposed a sentence of 174 months instead of 210 months.

Several times throughout the discussion with counsel that took place during the sentencing hearing, the government objected to the re-sentencing on the grounds that in fact the court was simply changing its mind or re-weighing the treatment Defendant received, noting that a "defendant is not constitutionally entitled to individualized sentencing." (ROA at 463, 471, 472). The court responded each time with similar words that "this is not a change of mind here . . . the clear, reversible error in this case was the court refusing to consider characteristics personal to this defendant on a policy-based reason because of a concern as to what other defendants might do in other cases now or in the future." (ROA at 463).

## DISCUSSION

### THE DISTRICT COURT'S AUTHORITY TO RE-SENTENCE DEFENDANT PURSUANT TO FED. R. CRIM. P. 35(a)

#### 1.    Standard of Review

Whether a district court had the authority to re-sentence defendants under Fed. R. Crim. P. 35(a) is a question of law that is reviewed *de novo* by this Court. *See United States v. Houston,* 529 F.3d 743, 748-49 (6th Cir. 2008). The applicable rule states in pertinent part that "Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other

6

clear error." Fed. R. Crim. P. 35(a). Therefore, this Court reviews *de novo* whether there was clear error as a matter of law that would give the district court jurisdiction to correct Defendant's sentence.

## 2.        The District Court Properly Exercised its Authority under Rule 35(a)

A judge may correct a sentence pursuant to Fed. R. Crim. P. 35(a) for technical or arithmetical errors or other "clear errors." In this case, the alleged clear error was the district court's failure to consider Defendant's treatment efforts post-arrest. The government argues that in fact, the district judge did consider Defendant's treatment efforts, but afforded little weight to them because "the court ultimately determined the Defendant's case was not 'particularly different.'" (Appellant's Br. at 7-8). In response, Defendant argues that the district judge's own appraisal of his conduct at the first hearing should control, and that in fact the district court stated that he categorically ignored Defendant's rehabilitation efforts. This Court concludes that the district court committed clear error in the first sentencing by impermissibly adopting a bright-line rule that it would not consider post-arrest treatment efforts made by defendants rather than giving the required "individualized assessment based on the facts presented." *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 597 (2007). As a result, the district court had jurisdiction to re-sentence Defendant under Fed. R. Crim. P. 35(a).

A district court's authority to correct a sentence under Fed. R. Crim. P. 35(a) is quite narrow. *Houston*, 529 F.3d at 749. It is limited to cases in which the error recognized by the district judge is "an obvious error or mistake that would have resulted in a remand by this Court." *United States v. Arroyo*, 434 F.3d 835, 838 (6th Cir. 2006) (citing *United States v. Galvan-Perez*, 291 F.3d 401, 407 (6th Cir. 2002)). The issue in this case is whether the district court was required to give

consideration to the treatment Defendant received, whether or not the court ultimately decided to lower his sentence as a result, such that it would be clear error to do otherwise.

In recent years, the state of the law on sentencing in the federal courts has been transformed as a result of the Supreme Court converting a mandatory sentencing scheme into one where the sentencing guidelines are now advisory in nature. *See United States v. Booker,* 543 U.S. 220, 258-62 (2005). District courts have been given much more specific guidance in sentencing decisions while appellate courts have been instructed to give more deference to those district court decisions in reviewing sentencings for procedural and substantive reasonableness. *Gall,* 128 S.Ct. at 596-97 (sentencing judge must undertake individualized assessment of relevant factors in sentencing; appellate review of substantive reasonableness of sentence is for abuse of discretion); *Rita v. United States,* 551 U.S. 338 (2007) (sentencing judge must explain reasons for sentencing, but within Guidelines can be less detailed explanation); *United States v. Klups,* 514 F.3d 532, 537 (6th Cir. 2008) (procedural reasonableness requires setting forth rationale for sentencing such that appellate court can see from record that parties' arguments were considered). Since neither party to this case challenges the substantive reasonableness of either sentence, the only issue on appeal is procedural reasonableness.

Procedural reasonableness is evaluated first by an appellate court in reviewing sentencing decisions from the district court. *See United States v. Bolds*, 511 F.3d 568, 578-81 (6th Cir. 2007) (setting forth the process an appellate court uses to review for reasonableness). "A sentence may be procedurally unreasonable if the district court 'did not appreciate the non-mandatory nature of the guidelines, did not correctly calculate the sentencing range under the guidelines, or did not consider

the § 3553(a) factors.'"[1] *United States v. Phinazee* 515 F.3d 511, 514 (6th Cir. 2008) (quoting *United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006)); *accord United States v. Herrera-Zuniga*, 571 F.3d 568, 582-83 (2009) (appellate court reviewing for procedural reasonableness must "consider whether the sentence reflects the considerations set forth in § 3553(a)").

A sentence is also procedurally unreasonable if the district court fails to address a nonfrivolous argument made by the defendant in support of a lower sentence. *United States v. Blackwell,* 459 F.3d 739, 774 (6th Cir. 2006) ("the black letter law of this Circuit requires district courts to consider all factors brought to their attention by a defendant"); *see also United States v. Vonner,* 516 F.3d 382, 388 (6th Cir. 2008) (*en banc*) (the district judge has a duty to consider each relevant factor in sentencing); *United States v. Richardson,* 437 F.3d 550, 554 (6th Cir. 2006) (if "defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it"); *accord United States v. Studebaker*, 578 F.3d 423, 430-31 (6th. Cir. 2009) (the district court must consider on the record all relevant § 3553(a) factors and all nonfrivolous arguments from both parties).

---

[1]The statute states, in relevant part, that

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>> (1)     the nature and circumstances of the offense and the history and characteristics of the defendant;
>>     . . .

18 U.S.C. § 3553(a).

The analysis of procedural reasonableness in this case turns in part on how the Court is to evaluate the district court's assessment of its own state of mind during the first sentencing. Defendant argues that the district court is owed near absolute deference as to its appraisal of what it did or considered in the first sentencing. There is very little case law on the appropriate amount of deference an appellate court must give to the district court's view of its own state of mind, but that case law weighs in favor of Defendant's position. *See United States v. Guthrie,* 557 F.3d 243, 256 (6th Cir. 2009) ("[I]n the absence of any more explicit evidence, we will not impute an improper analysis to a sentencing judge."); *United States v. Combs,* 470 F.3d 1294, 1296 (9th Cir. 2006) ("Insofar as this inquiry relates to the district judge's representation as to his own state of mind, such absolute deference is inevitable."). The government does not offer any evidence or argument that the district court was purposefully misrepresenting itself when it characterized its procedural method at that first sentencing as "completely contrary to [its] responsibility to impose an individualized sentence on this defendant." (ROA at 457). So unless it is apparent from the record that in fact the district court did give individualized assessment to Defendant's post-arrest treatment efforts and so was simply reweighing that treatment in the second sentencing, this Court gives great deference to the district court's own recounting of its state of mind that it failed to consider the treatment at all in actually determining Defendant's sentence.

The district court's statements about Defendant's treatment and its policy concerns about post-arrest treatment more generally reveal that at the first sentencing the district judge adopted a policy, or bright-line rule, of categorically ignoring such treatment. This bright-line rule was a clear error of law because such a rule does not allow for the judge to give individualized assessment to

the history and characteristics of the defendant as required by statute. *See Gall*, 128 S.Ct. at 597. The district court made several comments in the first sentencing about the nature and quality of Defendant's treatment. For example, the district court observed the "certainly [Defendant] has taken advantage of his treatment options prior to sentencing, which is a good thing." (ROA at 439). However, ultimately the district judge made a rule that he would not consider such treatment in sentencing because of his concern that it would lead to future defendants attempting to manipulate the system by getting more and more treatment, which in turn would privilege those who could afford such treatment. This conclusion that the district court adopted a bright-line rule against weighing the post-arrest treatment efforts of Defendant is bolstered by the district judge's admission in the second sentencing hearing that he was correcting the sentence because of "what this court declined to take into consideration regarding this defendant." (ROA at 455).

The government gives great weight in its argument on appeal that the district judge did not consider Defendant to be an extraordinary defendant, or a "particularly different" one, in order to show that the court did give consideration to his treatment. (Appellant's Br. at 11-12, 15). But this characterization of the district judge's assessment takes his comments somewhat out of context. The district judge found Defendant's personal history to be "fairly unremarkable," (ROA at 436), but when he used the phrase "particularly different" it was with respect to determining what sentence is appropriate within the range of applicable sentences, which factored into his discussion of why he was not going to consider the treatment in determining Defendant's sentence. (ROA at 439-40).

The government argues in part that the district court did give sufficient consideration to Defendant's treatment and in part that it was proper for the district judge to consider policy

arguments when weighing such treatment. However, the district court did not simply consider policy arguments vis-á-vis post-arrest treatment; instead, it adopted *a policy*, or a bright-line rule, that because of its policy concerns it would not consider or give any weight to such treatment in Defendant's case or in any other. That kind of categorical refusal to make an individualized assessment runs afoul of the statutory requirement that the district court individually assess the "history and characteristics of the defendant" as interpreted by this Circuit and the Supreme Court. 18 U.S.C. § 3553(a)(1); *see also Gall*, 128 S.Ct. at 597; *Rita*, 551 U.S. at 356-57; *Klups,* 514 F.3d at 537; *United States v. Thomas,* 498 F.3d 336, 340-41 (6th Cir.2007).

The district court in this case did not seek to correct the sentence for reasons that would be better understood as a "change of mind;" rather, it found a clear procedural error that would have led an appellate court to remand for re-sentencing. *See Houston*, 529 F.3d at 749. The court did not reconsider information about Defendant's treatment or reweigh it; instead, it corrected its prior decision to disregard any individualized treatment efforts by defendants in this case or any case because of the district judge's rule against taking such treatment into consideration.

Although, "courts may vary [from Guidelines ranges] based solely on policy consideration, including disagreements with the Guidelines," *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 570 (2007), a district court's judgment about how to individually assess a factor, including its weighing of policy concerns, would be subject to an abuse of discretion standard of review on appeal. *See Studebaker*, 578 F.3d at 431-32; *see also Gall*, 128 S.Ct. at 600. Arguably, the district court committed clear error when it refused to consider such treatment at all, for any defendant. Instead, if the court is concerned about the possibility of manipulative defendants or the unfairness

12

to defendants who cannot afford treatment, then the court could weigh those policy concerns alongside the particular history and characteristics of the defendants.

The government and Defendant both raise arguments about whether there is a constitutional right to an individualized sentence for non-capital defendants. It is not fully settled whether there is such a constitutional right, though some precedent in this Circuit may have suggested otherwise. *See United States v. Odeneal,* 517 F.3d 406, 415 (6th Cir 2008) ("We have held, however, that there is no constitutional right to individualized sentencing in non-capital cases.") (citing *United States v. Levy,* 904 F.2d 1026, 1035 (6th Cir.1990); *United States v. Gardner,* 931 F.2d 1097, 1099 (6th Cir.1991)). However, we need not settle that issue in this case because there is a clear statutory right embodied in 18 U.S.C. § 3553(a) to have the district court individually assess "all factors brought to their attention by a defendant." *Blackwell*, 459 F.3d at 774 (6th Cir. 2006). It is under that statutory right that it was clear error for the district court to adopt a policy, or bright-line rule, of not considering treatment that defendants such as Defendant seek regardless of whether the particular defendant appears to be acting in good faith or is being manipulative or simply taking advantage of his relative financial privilege to afford such treatment in order to mitigate his punishment.

**CONCLUSION**

It was clear error under existing precedent in this Circuit and from the Supreme Court for the district court to categorically refuse to consider Defendant's post-arrest treatment as part of the required analysis under 18 U.S.C. § 3553(a). Therefore, the district court had jurisdiction under Fed. R. Crim. P. 35(a) to correct the sentence, which the district court itself acknowledged was improperly imposed. Therefore, we **AFFIRM** the district court's order.