NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0183n.06

Case No. 13-1586

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 07, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| MANUEL VERDUZCO, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: BATCHELDER, Chief Judge; SILER and CLAY, Circuit Judges.

**SILER**, Circuit Judge. Defendant Manuel Verduzco appeals his sentence. Upon his plea of guilty to conspiracy to distribute and possess with intent to distribute cocaine, the district court sentenced him to 180 months' imprisonment. The court denied Verduzco acceptance of responsibility credit and assessed him a three-level enhancement for his managerial role in the conspiracy. Verduzco appeals both of these decisions and also challenges the sentence as substantively unreasonable. For the following reasons, we **AFFIRM**.

## BACKGROUND

### I. Underlying Conduct

Verduzco approached his nephew, Edgar Torres De La Mora ("Edgar"), to set up a drug trafficking business in which Verduzco would acquire cocaine in California and he and Edgar

would deliver the drugs to Grand Rapids, Michigan. Edgar and his brother, Orlando Torres De La Mora ("Orlando"), arranged for others, including Ismael Olague-Vasquez ("Olague") and Carlos Rodriguez-Rodriguez ("Rodriguez"), to drive cocaine from California to Michigan.

In 2010, a vehicle driven by Olague and Orlando was stopped and searched, which ultimately led to the discovery of five one-kilogram packages of cocaine and a GPS unit. The GPS indicated a final destination of 622 Lynch Street, S.W., Grand Rapids, Michigan. Upon learning of Olague's and Orlando's arrest, Verduzco told the other co-conspirators to abandon the house at 622 Lynch Street and to discard their cell phones. He also rented two motel rooms, where Verduzco, Edgar, Rodriguez, and Israel Torres De La Mora ("Israel") stayed for a few days. The group then moved to a new residence on Walsh Street in Grand Rapids. The remaining cocaine was given to Oscar Ibarra Mondragon ("Mondragon") to sell. After Mondragon sold the cocaine, Verduzco agreed to drive Edgar in Verduzco's Chevrolet to California with Rodriguez in a second vehicle to pay for the cocaine.

Meanwhile, the Drug Enforcement Agency received information that Mondragon was a supplier of cocaine and marijuana in Grand Rapids. After Mondragon was arrested, he identified Edgar as a source for cocaine and reported that he had previously obtained cocaine from Edgar at 622 Lynch Street, and later at 1028 Walsh Street, S.E., in Grand Rapids.

Verduzco, Israel, and Orlando absconded to Mexico in late 2010. Verduzco later returned to the United States after unidentified gunmen killed his daughter and shot him in the wrist. Verduzco believes that his nephews, Israel and Orlando, tried to have him killed because they blamed Verduzco for Edgar's arrest and conviction.

## II.     Guilty Plea

In 2010, Edgar, Israel, Rodriguez, and three others were indicted for conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). Verduzco and Orlando were later added in a superseding indictment. In 2011, the government filed a second superseding indictment, which included proffer statements given by certain co-conspirators regarding the conspiracy and Verduzco's involvement.

In 2013, Verduzco pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine. At his plea proceeding, Verduzco admitted that he was involved in the conspiracy from April to June of 2010. He confessed that he rented the two motel rooms, that he knew his nephews were engaged in bringing cocaine from another state into Michigan to sell, and that he rented the rooms in part to avoid their arrest for drug trafficking. He also admitted that he drove Edgar in his truck to California at some point during the conspiracy, but was not specific about the purpose or date. Verduzco further conceded that he introduced Edgar to Mondragon in exchange for $500; however, he claimed that he did not at first realize the introduction was related to drugs.

## III.     Sentencing

At Verduzco's sentencing, the district court heard objections to the scoring of his Guidelines range. First, Verduzco objected to the aggravating role enhancement under USSG § 3B1.1, arguing that his role did not fit the definition of a leader and that he should receive a two-level enhancement, despite agreeing that five or more people were involved in the conspiracy, removing it from consideration. The court compromised on the objection, stating:

> [W]e're dealing here either with 3B1.1(a) or (b), and the real question is the status either as an organizer or simply a manager. It's pretty clear he was at the very least a manager. Whether he was an organizer is a little less clear. And, again,

based on my general philosophy involving the rule of lenity, I would grant a one-offense level reduction there.

Just to be clear then, the scoring for aggravating role will come under 3B1.1(b) at three-offense levels enhancement.

Verduzco then objected to the obstruction of justice enhancement under § 3C1.1, arguing that he did not threaten Edgar, Olague, and Mondragon while they were incarcerated. The court overruled his objection, finding the co-conspirators' affidavits to be "very credible" and supportive of the two-level enhancement.

Finally, Verduzco objected to the district court's denial of the acceptance of responsibility reduction under § 3E1.1. The court again overruled his objection, stating:

> When I prepare for sentencing I start at the beginning. . . . [W]hen I read the defendant's plea agreement or the plea transcript in front of [the magistrate judge], I had serious questions at that point, before I had ever looked at the presentence report, that [Verduzco] truly was accepting responsibility for his role in this offense. He did everything possible to minimize his involvement.
>
> * * *
>
> And then coming to the presentence report in which [the probation officer specialist], again, someone very experienced and with no axe to grind here, found Mr. Verduzco to be somewhat evasive, had significant lapses in memory on very important factors. It all suggests to me, convinces me, persuades me that there is not an acceptance of responsibility here.

The district court calculated Verduzco's Guidelines range to be 262 to 327 months' imprisonment. It then considered the 18 U.S.C. § 3553(a) factors, determined that the Guidelines range approached a life sentence because of Verduzco's age, varied downward seven years below the bottom of the Guidelines range, and sentenced Verduzco to 180 months' imprisonment.

## DISCUSSION

### I.  Acceptance of Responsibility Reduction

#### A.  Standard of Review

Because the district court "is in a unique position to evaluate a defendant's acceptance of responsibility . . . the determination of the [court] is entitled to great deference on review." USSG § 3E1.1 cmt. n.5. Therefore, we review for clear error. *United States v. Genschow*, 645 F.3d 803, 813 (6th Cir. 2011). The court's determination "will not be overturned unless it is without foundation." *United States v. Morrison*, 983 F.2d 730, 732 (6th Cir. 1993).

#### B.  Analysis

Verduzco argues that he should have received a two-point reduction for acceptance of responsibility because he pleaded guilty, confessed sufficient facts for the district court to accept his guilty plea, expressed regret, and admitted he knew what he did was wrong.

Under the acceptance of responsibility reduction, a defendant's offense level can be decreased by two levels if the defendant clearly demonstrates acceptance of responsibility. USSG § 3E1.1(a). The court should consider, *inter alia*, whether the defendant truthfully admitted to the conduct comprising his offense. *Id.* at cmt. n.1(A). The Guidelines advise that:

> Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct . . . will constitute significant evidence of acceptance of responsibility . . . . However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.

*Id.* at cmt. n.3. The Guidelines further advise that:

> Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.

*Id.* at cmt. n.4.

Because the district court assessed the obstruction of justice enhancement under § 3C1.1, Verduzco could only receive acceptance of responsibility credit in an extraordinary case. Although he entered a guilty plea and admitted his conduct comprising the offense, he threatened Edgar, Olague, and Mondragon, which is inconsistent with acceptance of responsibility. Further, Verduzco has not shown that his case is an extraordinary one in which both the obstruction of justice enhancement and the acceptance of responsibility credit should apply.

The district court did not clearly err in determining that Verduzco did not accept responsibility and was thus not entitled to a two-level reduction because there was ample evidence in the transcript of the plea proceeding and in the presentence report to show that he had not accepted responsibility and had instead tried to minimize his role in the conspiracy. *Genschow*, 645 F.3d at 813. Therefore, we will defer to the district court's conclusion that Verduzco did not accept responsibility. USSG § 3E1.1 cmt. n.5.

## II.      Managerial Role Enhancement

### A.  Standard of Review

We review a district court's findings of fact for clear error. *United States v. Washington*, 715 F.3d 975, 982 (6th Cir. 2013). Usually, we review its legal conclusions de novo; however, we review the legal conclusion that a person is an organizer or leader for the aggravating role enhancement under a deferential standard of review. *Id.* at 982-83. This review is deferential because an aggravating role enhancement "depends on a number of factual nuances that a district court is better positioned to evaluate" as the court "is most familiar with the facts and is best situated to determine whether someone is or is not a 'leader' of a conspiracy." *Id.* at 983.

### B.  Analysis

Verduzco argues that the district court did not make a sufficient factual determination that he should receive an enhancement for leadership of the conspiracy because the evidence does not show he exercised control over any person and because introducing Edgar to Mondragon only amounted to suggesting that the offense be committed.

Under the aggravating role enhancement, a defendant's offense level can be increased based on his role in the offense as follows:

> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

USSG § 3B1.1.

To qualify for an adjustment, a defendant must have been the organizer, leader, manager, or supervisor of one or more other participants, or people who are criminally responsible for the

offense. *Id.* at cmt. n.1 & n.2. "In general, 'a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted.'" *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000) (quoting *United States v. Gort-DiDonato*, 109 F.3d 318, 321 (6th Cir. 1997)).

Both Verduzco's admitted conduct and the proffers of his co-conspirators provide ample evidence that he was at least a manager in the conspiracy. Olague said that Verduzco was the boss of Edgar, who was the boss of Olague, and that Verduzco arranged all of the jobs for the defendants. Edgar declared that Verduzco introduced him to the cocaine business and to Mondragon, helped him set up the business, and arranged for the purchase of all the cocaine that the co-conspirators trafficked. Verduzco admittedly arranged the hotel rooms following Olague's and Orlando's arrest, and Edgar and Rodriguez said Verduzco ordered the co-conspirators to abandon the Lynch Street residence and discard their cell phones. Verduzco also admitted to introducing Edgar to Mondragon. Therefore, the evidence shows that Verduzco exerted control over at least one co-conspirator and was at least a manager of one co-conspirator, whether directly like Edgar, or indirectly like Olague.

Verduzco also exercised decision-making authority throughout the conspiracy, as evinced by Edgar's statement about setting up the business, Olague's statement that Verduzco arranged all of the jobs, Edgar's and Rodriguez's statements that Verduzco directed their activities after Olague and Orlando were arrested, and Mondragon's assertion that Verduzco set the price of the cocaine and controlled the source of cocaine for Edgar. Therefore, the nature of Verduzco's participation indicates that he was at least a manager in the conspiracy because he made many key decisions for the conspiracy and controlled the source of the cocaine supply.

The district court did not err in finding that Verduzco qualified for the three-level enhancement under § 3B1.1(b). *Washington*, 715 F.3d at 983. Verduzco's admitted conduct and his co-conspirators' proffers provide ample evidence that he did not "merely suggest committing the offense," USSG § 3B1.1 cmt. n.4, but instead exercised a leadership role in the conspiracy.

## III. Substantive Reasonableness of Sentence

### A. Standard of Review

We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard, "tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *United States v. Studabaker*, 578 F.3d 423, 430 (6th Cir. 2009) (quoting *Gall v. United States,* 552 U.S. 38, 51 (2007)). We apply a presumption of reasonableness for within-Guidelines sentences. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). If a sentence is below the Guidelines range, the defendant's burden to rebut the presumption is even higher. *See United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008) ("[S]imple logic compels the conclusion that, if [a within-Guidelines sentence] would have been presumptively reasonable in length, [a] defendant's task of persuading us that the more lenient [below-Guidelines sentence] is unreasonably long is even more demanding.").

### B. Analysis

Verduzco argues that his sentence is substantively unreasonable because Edgar, who is young and healthy and "a far worse actor in this drug conspiracy," received a sentence five years shorter than Verduzco's, and that this disparity erodes respect for the law.

Section 3553(a)(6) requires the district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of

similar conduct." Despite Verduzco's argument that the court should have considered the disparity between his and Edgar's sentences,

> [s]ubsection 3553(a)(6) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct. It is not concerned with disparities between one individual's sentence and another individual's sentence, despite the fact that the two are co-defendants. Instead, § 3553(a)(6) is there to ensure nationally uniform sentences among like offenders so as to leave room to depart downward for those defendants who are truly deserving of leniency.

*United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007) (internal citations omitted). Although a district court may determine a defendant's sentence in light of a co-defendant's sentence, such action "would be a discretionary one because the district court is not *required* to consider that type of disparity under § 3553(a)(6)." *Id.* at 624.

Verduzco has failed to make an argument regarding the disparity between his sentence and the sentence of defendants across the nation with similar criminal backgrounds convicted of similar conduct. Therefore, there is no evidence that Verduzco's sentence is substantively unreasonable when compared with those of similarly situated defendants. Verduzco is not able to rebut the demanding presumption of reasonableness that accompanies his below-Guidelines sentence. *Curry*, 536 F.3d at 573. The district court did not abuse its discretion when it sentenced Verduzco to 180 months' imprisonment, seven years below his Guidelines range. *Studabaker*, 578 F.3d at 430.

**AFFIRMED**.